[No. 22144. Department One. December 17, 1929.]

THE STATE OF WASHINGTON, *Respondent*, v. DECASTO EARL MAYER *et al., Appellants.*[1]

[1]Reported in 283 Pac. 195.

*Henry Clay Agnew* and *Earle C. Lassen,* for appellants.

*Ewing D. Colvin* and *John J. Dunn,* for respondent.

PARKER, J.—The defendants, Mayer and Mrs. Smith, his mother, were, by information filed by the prosecuting attorney of King county in the superior court for that county, charged, in so far as need be here noticed, as follows:

## "COUNT I.

"They, said Decasto Earl Mayer and Mary Eleanor Smith, and each of them, in the county of King, state of Washington, on or about the 5th day of September, A. D. 1928, wilfully, unlawfully, fraudulently and feloniously did then and there obtain from James Eugene Bassett by means of a scheme, trick and device, and did then and there wilfully, unlawfully and feloniously take, steal and drive away one Chrysler roadster automobile of the value of sixteen hundred dollars ($1,600) in lawful money of the United States, the property of said James Eugene Bassett, with intent then and there to deprive and defraud the said James Eugene Bassett thereof."

## "COUNT II.

"They, the said Decasto Earl Mayer and Mary Eleanor Smith, and each of them, in the county of King, state of Washington, on or about the 5th day of September, A. D. 1928, wilfully, unlawfully and feloniously did then and there take, steal and carry away, and from the person of one James Eugene Bassett did then and there wilfully, unlawfully and feloniously take, steal, and carry away . . . , all of a total value of twenty-eight dollars and fifty cents ($28.50) in lawful money of the United States, the property of James Eugene Bassett, with intent to deprive and defraud the said James Eugene Bassett thereof."

Following the overruling of their demurrers to each count of the information and their pleas of not guilty as to each count, they were tried jointly, the court sitting with a jury, at the conclusion of which a verdict of guilty on both counts was rendered against each of them. Following the overruling of their motions for a new trial, a separate penitentiary sentence judgment was rendered against each of them, from which each has appealed to this court. They were in the superior court represented, and are here represented, by the same counsel, and their appeals presented together.

It is contended in behalf of appellants that both counts of the information are demurrable because of duplicity, in that in each there are charged different means of committing the larcenies, and that therefore each charges more than one offense. In this connection, it is contended that in any event the trial court should have, in response to timely motions made in behalf of appellants, required the prosecuting attorney to elect as to which charged means of committing the respectively alleged larcenies he relied upon for conviction. We regard these contentions as unfounded. The applicable general rule is well stated in Bishop's New Criminal Procedure (4th ed.), § 436, as follows:

"A statute often makes punishable the doing of one thing, *or* another, *or* another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction, a person who in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them."

Each count of this information charges two means of taking of the property of Bassett by appellants, each or both of which in each count constitute larceny. The first count charges the obtaining of the property by trick or device, and also the obtaining of the property by taking, stealing and driving it away. The second count charges the taking of the property from the person of Bassett, and also charges the obtaining of the property by taking, stealing and carrying it away. Our decisions in *State v. Murie*, 140 Wash. 71, 248 Pac. 79, and *State v. Spiller*, 146 Wash. 180, 262 Pac. 128, recognize the law to be as stated in the above quotation from Bishop's New Criminal Procedure. We conclude that the demurrers to the information were properly overruled, and that the motion of appellants' counsel to require the prosecuting attorney to elect was properly denied.

 It is contended in behalf of appellants that the trial court erred to their prejudice in refusing to give to the jury their timely requested instruction, as follows:

"You are instructed that no presumption or inference of guilt can be taken from the fact that the defendants have failed to take the witness stand and testify in their own behalf."

The claimed right of appellants to have such an instruction given is rested upon the provision of Rem. Comp. Stat., § 2148, reading as follows:

"It shall be the duty of the court to instruct the jury that no inference of guilt shall arise against the accused if the accused shall fail or refuse to testify as a witness in his or her own behalf."

While this, as a mandatory statutory requirement to be performed by the trial court without request by the accused, has been abrogated by our Rule IX, adopted January 14, 1927, 140 Wash. p. xli (Rem. 1927 Sup.,

§ 308-9), we have held that such abrogation does not withhold from the accused the right to have such instruction given to the jury when it is properly requested that it be given, the accused not having testified. *State v. Pavelich,* 150 Wash. 411, 273 Pac. 182; *State v. Pavelich,* 153 Wash. 379, 279 Pac. 1102; *State v. Pavelich,* 153 Wash. 701, 279 Pac. 1107. We adhere to that holding.

■ Was appellant Mayer entitled to have this requested instruction given to the jury? We think not, because he, in legal effect, testified in his own behalf before the jury. During the trial, the prosecuting attorney sought to prove that a certain telegram sent to Bassett's sister and purporting to come from Bassett, was in fact in the handwriting of Mayer, and that Mayer had actually sent such telegram. This proof, if believed by the jury, would be a very damaging piece of evidence against Mayer. For the purpose of negativing this evidence, Mayer, in the presence of the jury, wrote upon three pieces of paper samples of his handwriting, which papers were then introduced in evidence in behalf of Mayer, manifestly to the end that his counsel might argue to the jury, by comparing such samples of Mayer's handwriting with the handwriting of the telegram, that the telegram was not in Mayer's handwriting. We are of the opinion that, when Mayer so made these samples of his handwriting before the jury, he was, in legal effect, testifying in his own behalf just as if he had made such samples out of the presence of the jury and then brought them into the presence of the jury and there testified that they were samples of his handwriting. In 2 Wigmore on Evidence (2nd ed.), p. 88, in §§ 789-790, that learned author makes these very illuminating observations:

"Man does not communicate by words alone; and it may occur that words become inferior to action as a

mode of communicating a correct impression of a scene observed. Certainly, in an appropriate case, it is proper and customary for the trial court in its discretion to sanction a departure from the ordinary or verbal medium and permit the witness to make clearer his own observed data by representing them in gesture, . . .

"It would be folly to deny ourselves on the witness-stand those effective media of communication commonly employed at other times as a superior substitute for words."

Our own decisions in *State v. Nordstrom,* 7 Wash. 506, 35 Pac. 382, and *State v. Dooley,* 82 Wash. 483, 144 Pac. 654, contain observations in harmony with the views of Professor Wigmore, above quoted, though we do not cite them as exactly in point. Mayer, in legal effect, said to the jury, when he made these samples of his handwriting in their presence, "These are my handwriting," as plainly as if he had orally there so told the jury.

Nor does the fact that Mayer was not formally sworn as a witness negative the view that he, in legal effect, testified in his behalf when he made, in the presence of the jury, these samples of his handwriting. What he there by his act said to the jury, was intended by him to be evidence tending to show that he did not write the telegram in question. So we are of the opinion that his failure to be sworn as a witness is not a matter that he can now take advantage of for the purpose of having the trial court give to the jury the requested instruction upon the theory that he did not testify in his own behalf. 40 Cyc. 2412; 28 R. C. L. 585.

Was appellant Mrs. Smith entitled to this requested instruction, she not having testified in any manner during the trial? The only argument made by the prosecution in support of the court's refusal to

give this instruction in behalf of Mrs. Smith, and indeed the only argument that can now be made in that behalf since our decisions in the Pavelich cases above noticed, is that the court was justified in refusing to give such instruction in favor of Mrs. Smith because it was requested in plural form; that is, requested in behalf of the "defendants." It is not argued that the requested instruction erroneously states the law as applicable to an accused who has not testified during his trial. We are of the opinion that the request should be construed as having been made in behalf of Mayer and Mrs. Smith separately as well as jointly, and that it should have been given in behalf of Mrs. Smith because she did not testify in any respect, though the request, as applicable to Mayer, was properly refused because he did testify in his own behalf in the manner we have above noticed. The instruction, as requested, we think, is not such a commingling of correct and erroneous instructions, in a single requested instruction, as justified the trial court in refusing to give it as applicable to Mrs. Smith. We conclude that the refusal to give this requested instruction, as applicable to her, constituted error entitling her to a new trial.

The disappearance of Bassett upon the day of the alleged commission of the crime became a matter of relevant proof in behalf of the prosecution. As one item of the evidence tending to prove his disappearance and the losing of all trace of him by his relatives and friends from that time on, his brother-in-law was called as a witness by the prosecuting attorney and permitted to answer, over the objection of counsel for appellants, as to statements made by Bassett when last seen by his brother-in-law, indicating his, Bassett's, intention upon leaving his brother-in-law to re-

turn the same day. This testimony of the brother-in-law was objected to by counsel for Mayer upon the theory of it being hearsay. We think this was admissible as a part of the *res gestae* of Bassett's going away and his failure to return. *State v. Pearce,* 87 Kan. 457, 124 Pac. 814; *State v. Young,* 109 Kan. 526, 200 Pac. 285; *Max v. People,* 78 Colo. 178, 240 Pac. 697; *State v. Farnam,* 82 Ore. 211, 161 Pac. 417.

Some other contentions are made in behalf of appellants and very briefly argued. We feel justified in disposing of these contentions in a similar summary manner by saying that we have carefully examined them and find them all without merit.

The judgment against appellant Mayer is affirmed. The judgment against appellant Mrs. Smith is reversed and she is awarded a new trial. The cause is remanded to the superior court for further proceedings consistent with the conclusions we here reach.

MITCHELL, C. J., TOLMAN, BEALS, and MILLARD, JJ., concur.