**UNITED STATES of America ex rel. John FIORAVANTI, No. 41785, Appellant,**

v.

**Howard YEAGER, Principal Keeper, New Jersey State Prison, Trenton, Appellee.**

**No. 17143.**

United States Court of Appeals Third Circuit.

Argued Oct. 11, 1968.

Decided Dec. 17, 1968.

Joel J. Finer, Flushing, N. Y., for appellant.

Elliot L. Katz, Freehold, N. J. (Vincent P. Keuper, Monmouth County Prosecutor, Freehold, N. J., Thomas L. Yaccarino, Asst. County Prosecutor, on the brief), for appellee.

Before McLAUGHLIN, STALEY and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

Appellant was convicted in the state court of breaking and entering with intent to steal, receiving stolen property and possessing burglary tools. His conviction was affirmed on appeal to the New Jersey Supreme Court and the United States Supreme Court denied certiorari. This proceeding is an appeal from the denial by the District Court of appellant's application for a writ of habeas corpus.

The basic question before us is whether appellant in effect testified on his own behalf at his trial and so justified comment by the trial judge in his charge

that defendant had failed to deny other major evidence against him.

Two people were indicted for the robbery involved, one Belardo and appellant. Belardo pleaded guilty and was a trial witness on behalf of appellant. He testified that he alone committed the robbery and that Fioravanti did not take any part in it. The robbery with its subsequent events occurred during the late night of July 19, 1962 and early morning of July 20, 1962. At the trial the state presented impressive evidence that appellant and Belardo committed the offense. Appellant did not take the witness stand. There was police testimony that appellant's automobile had been under surveillance the night of the robbery. Following the latter, appellant and Belardo in appellant's automobile were arrested. The bundles which they had been seen putting into the car contained the proceeds of the robbery and burglar tools. The police at that time took possession of the trousers appellant was then wearing. There was evidence that the particles found on them were identical to paint and safe lining from the safe which had been robbed. The trousers were marked into evidence. The trial took place almost two years after the crime. The police officer who had identified the trousers was examined very carefully by defense counsel regarding appellant's trial appearance as compared to how he looked on the night of the robbery. A series of leading questions were asked as follows:

"Q. Does Fioravanti look about the same now as he did at that time?

A. Without the glasses, his hair was mussed up a little bit.

Q. But his build is about the same, is it not?

A. I can't tell with that jacket on. That night he had a dark T-shirt, black and white T-shirt on, I have to see him without the jacket to really tell.

Mr. Frankel: (To Mr. Fioravanti) Do you want to stand up for a minute and take your coat off?

The Witness: From all appearances he looks the same as he did that night.

Q. From all appearances he looks the same? Thank you. (Tr. 157a)."

The above, as is frankly stated in appellant's brief, was in deliberate preparation for the defense maneuver which came later:

"As previously noted, defense counsel elicited testimony from a prosecution witness that petitioner, from all appearances, looked the same at the trial as he did the night of the arrest. (Tr. 157a). Having adduced evidence of constancy of girth, petitioner wore the black pants for the jury's observation. (Tr. 311a–312a)."

As the final element of the affirmative defense proof appellant's counsel stated to the judge that he would like defendant Fioravanti to go into the jury room and put on the black trousers above mentioned. Counsel said "I expect to rest after that is done, after that and make a motion." The judge permitted this. Fioravanti put the trousers on, returned to the court room and removed his jacket at the request of his lawyer. Then as quoted above from appellant's brief "Having adduced evidence of constancy of girth, petitioner wore the black pants for the jury's observation." The vital importance of that evidence to the entire defense theory was immediately thereafter and dramatically presented to the jury by Fioravanti's lawyer in his summation for his client when he said:

"The Prosecutor offered these trousers in evidence. I asked the officer a half dozen times are you sure they were the trousers being worn by Fioravanti and he was positive and so I had Fioravanti put them on and you could have put two Fioravantis in the waistband of the trousers when he stood before you with the drooping drawers, as he stood before you. They were not his trousers and he never wore them. Belardo told you he didn't want to go into the lounge because his trousers were torn. That's why he didn't want to go into the Royal Manor. Ex-

amine these trousers and see where they are torn. And the Prosecutor had them all the time ever since they took them off his person on the morning of July the 20th and nobody else had them except the Prosecutor's Office, the State Police or the police. That's the story. *That's the case.*" (Emphasis supplied.)

The complete situation concerning appellant's trouser evidence was before the state court on appeal, State v. Fioravanti, 46 N.J. 109, 215 A.2d 16 (1965). That court held that defendant's testimonial behavior before the jury justified the trial judge's comment in his charge that if there were facts in evidence tending to inculpate the defendant which he could have denied under oath his failure to so testify "may be considered by you and you may infer that he could not truthfully deny the inculpatory facts adduced against him."

In that finding the state court gave full acceptance to Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) and Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). It based its holding on the landmark decision in Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). There the defendant on the witness stand had partially refuted the government evidence. The Supreme Court upheld the trial court's instruction to the jury that in those circumstances, comment by the court was proper on defendant's failure to deny or explain evidence of an incriminating nature against him. There was no secret about the defense tactic before us in this appeal. It was a bold attempt to convince the jury that the robber in the black pants was not Fioravanti but the heavier, larger Belardo who claimed to have been the only person involved in the crime. As the defense attorney told the jury "That's the case."

State v. Mayer, 154 Wash. 667, 283 P. 195 (1929) is perhaps the closest reported decision. The state statute called for a mandatory jury instruction that there was no inference of guilt if the defendant did not testify. Mayer wrote his signature in the presence of the jury. The purpose of that was to counteract state testimony that Mayer had written a telegram which was in evidence. The trial judge, citing 3 Wigmore, Evidence, 3d ed. 1940, Section 789, p. 172, held that the defendant in effect had testified. The court said:

"Nor does the fact that Mayer was not formally sworn as a witness negative the view that he, in legal effect, testified in his behalf when he made, in the presence of the jury, these samples of his handwriting. What he thereby his act said to the jury was intended by him to be evidence tending to show that he did not write the telegram in question. So we are of the opinion that his failure to be sworn as a witness is not a matter that he can now take advantage of, for the purpose of having the trial court give to the jury the requested instruction upon the theory that he did not testify in his own behalf."

As we have seen appellant directly communicated to the jury the strongest point in his defense. His attorney supported this in toto by the above noted detailed oral interpretation of his client's performance. If the jury had accepted that theory intentionally and powerfully conveyed as it was, appellant might well have been acquitted.

We are not in this appeal dealing with any defense afterthought that made its first appearance in the petition for habeas corpus in the district court. The whole sequence was part of the trial. It was the main point argued and decided in the state court appeal. It was the base of the application for certiorari to the United States Supreme Court which was denied. The net result of the carefully planned action of appellant was substantial proof in his favor which at the same time eliminated the very real danger of Fioravanti taking the witness stand and exposing himself to ruinous cross-examination. There is nothing in the cases cited on behalf of appellant that vitiates

**678**

this view. The judgment of the District Court will be affirmed.

We express our deep thanks to appellant's counsel in this Court for his unselfish, thoroughly fine representation of appellant.