**William Shane HAND, Movant, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 53801.**

Supreme Court of Missouri,
Division No. 2.

Dec. 8, 1969.

John R. Moore, Platte City, for appellant.

John C. Danforth, Atty. Gen., Warren K. Morgens, Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

In this proceeding to vacate and set aside under Supreme Court Rule 27.26, V.A.M. R., two convictions of robbery and consecutive sentences imposed therefor of fifteen and ten years imprisonment, appellant contends here only that his pleas of guilty to the charges were not knowingly and understandably made and were therefore involuntary.

An evidentiary hearing was had in the trial court on the allegations of the motion. On the date the case was originally set for

trial, February 17, 1967, the transcript shows that Mr. Robert P. C. Wilson, III, as counsel, appeared with appellant and informed the court that appellant had told him he was ill, which counsel believed. A continuance was requested for the purpose of having appellant see a doctor so that the nature and extent of his illness could "be treated so that he might be in a better position to plea." A continuance was granted to February 21, 1967, at which time appellant, first by counsel, entered pleas of guilty to the separate charges of armed robbery. In answer to questions by the court, appellant stated that he understood the charges; that he did not desire further time to discuss the matter with friends, relatives or his lawyer "or anyone else"; that he was aware of the possible penalty; and that he wanted to enter a plea of guilty to the charges. The prosecuting attorney then stated the facts of the offenses to the court. Counsel for appellant made a statement in his behalf, and asked the court to show mercy, appellant being then twenty-one years of age and subject to rehabilitation according to counsel. Appellant stated again that he was pleading guilty; no one made any promises or threats to him to get him to make the pleas; and that he was making the pleas because he was really guilty.

The allegations of the motion are that appellant was not given effective assistance of counsel; that his pleas were given under an atmosphere of substantial coercion and inducement, created by state authorities and appointed counsel, and the prospect of going to trial without effective counsel; that appellant was frightened and threatened by appointed counsel before entering the pleas of guilty; that appellant desired a trial on both charges, but counsel stated he would not defend him at a trial, but would enter a plea of guilty for him; that counsel promised him that two terms would be given him if he would plead guilty to both counts (charges); that counsel stated a term of "about 50 or 60 years" would be given if appellant were to pro-

ceed with a trial; and that appellant would be in deep trouble if he proceeded to trial.

On the hearing below, appellant testified that his counsel, Mr. Wilson, was very reluctant to take the case to trial and told him so on two different occasions. He told Mr. Wilson he did not want to enter a plea of guilty, but wanted to take both cases to trial. Mr. Wilson told him that there was a possibility he would get a larger amount of time, not specifically stating what he meant by a "large amount of time," but at one time he said fifty or sixty years. Mr. Riley, who also at one time represented appellant, told him that he had talked to Mr. Witt, the prosecutor, and two things were determined: "[O]ne, that the habitual criminal act would not be filed if I were to plead guilty; and both sentences would run concurrently and not consecutively." Mr. Riley ceased to represent appellant because he wanted to take the cases to a jury trial. (The record shows that appellant entered pleas of not guilty with his court-appointed counsel, Mr. Terrence Riley, on January 25, 1967. On February 9, 1967, in both cases, appellant requested Mr. Riley to withdraw as counsel, which was allowed by the court, and Mr. Robert P. C. Wilson, III, was appointed as his counsel.) He thought Mr. Riley was not capable of handling the cases because of his age, and Mr. Wilson was appointed. Appellant was frightened and threatened by what Mr. Wilson had told him as to possible sentences if he went to trial before a jury. Mr. Wilson did not actually say that he would not defend him in a jury trial, but advised him not to take it to a jury. Appellant assumed (from what Mr. Riley had told him) that the sentences would "run together"; that he did not ask Mr. Wilson about it. Mr. Wilson's advice to appellant that he plead guilty was against his better judgment; he relied on Mr. Riley's statement as to the sentences running concurrently and that the Habitual Criminal Act would not be filed against him, which was the reason he pleaded guilty; "Also, Mr. Wilson told me that a

term of approximately seven or eight years —he was trying to get this cut down to approximately seven or eight years. And he knew that—he told me that he knew that a term of five years, which is the minimum on this charge, would probably not be given, due to the seriousness of the charge."

On cross-examination appellant admitted that Mr. Wilson never did tell him he would not try his case, but advised him that a guilty plea was in order. Harold Stevens, a deputy sheriff, was the only one who told appellant that he was in serious trouble and was likely "to get quite a bit of amount of time."

In answer to questions from the court, appellant conceded that at the time of his plea the court offered him additional time to discuss the matter with relatives, friends or his attorney, and that he had told the court there had been no threats and promises. "THE COURT: Now, buttoning this down: is it my understanding that the only reason you're complaining is because you got a heavier sentence than you anticipated—than what you were led to believe? THE PETITIONER: Yes, sir. THE COURT: That was just an assumption on your part? Nothing definite was said? THE PETITIONER: Outside of this Mr. Riley telling me that the sentences would run concurrently. THE COURT: That was an attorney who you requested to withdraw from the case? THE PETITIONER: Yes. THE COURT: Then Mr. Wilson told you, if my understanding is correct on this—and I want to be correct; I'm not trying to put words in your mouth, I just want to be clear as to the understanding: that you were not told that you would get a definite sentence, but you only supposed that you would, and that Mr. Wilson told you that he would attempt to get a light sentence for you? THE PETITIONER: Yes, sir. THE COURT: But if it was a heavy sentence, that you would be eligible—not to be too disappointed because you would be eligible for parole? THE PETITIONER: Yes, sir."

■ Mr. R. P. C. Wilson, III, testified that he conferred with appellant four to six times while he was in jail and in court, extending in time from an hour to most of an afternoon. He investigated the case as to what the testimony of prosecuting witnesses would be from the prosecutor, and from newspaper clippings of the incident. On being questioned by the prosecuting attorney as to what he told appellant with reference to the sentence that might be imposed, and his legal rights, Mr. Wilson declined to answer, "[F]or the reason that it's privileged communication between Mr. Hand and me, inasmuch as I was his attorney at the time." A discussion was then had as to whether appellant had waived any such privilege, after which counsel for appellant entered his objection which was sustained by the court. No further testimony was received from Mr. Wilson concerning his former representation of appellant, and Mr. Riley, who represented appellant prior to the time Mr. Wilson was appointed, was not called as a witness although he was available. No attorney-client privilege existed after appellant filed his motion and testified concerning alleged ineffective assistance of counsel, and misleading advice as to what sentences would be imposed and whether they ran concurrently or consecutively. The very relationship of appellant and counsel was in issue. "[B]ut he cannot avail himself of the privilege to shield himself from a disclosure of facts which are a legitimate subject of inquiry." 97 C.J.S. Witnesses § 276, p. 785. See also the civil case of Simmons v. Universal Life Ins. Co., 227 Mo.App. 1238, 61 S.W.2d 382, 384 [7, 8], stating to the effect that where a client testifies, without objection, to conversations with his lawyer, the client waives the right to object to the testimony of the lawyer. Here, appellant not only put into issue the competence and conduct of his counsel but testified to conversations about the representation afforded him, so it would here appear that the objection to Mr. Wilson's testimony was not well taken.

The court found that Mr. Wilson advised appellant that he would probably get a heavy sentence from the jury, but gave him no opinion as to whether the court would give a sentence which would be concurrent or consecutive, and appellant did not ask Mr. Wilson as to whether the sentence would be consecutive or concurrent. It was further found that neither of appellant's appointed counsel exercised coercion or inducement upon him to plead guilty and that no officials of the State of Missouri or the County of Platte exercised coercion or inducement upon him so to plead; that Mr. Wilson, being immensely competent, was completely willing to try the case to a jury; and that neither appointed counsel frightened or threatened appellant. Lastly it was found that appellant knew exactly what he was doing when he entered a plea of guilty, and was aware of the range of punishment that could be imposed upon him; that when the court ruled that his sentence was to be consecutive and when a greater number of years was imposed upon him than he had hoped for, appellant became dissatisfied with his appointed counsel; and that appellant's plea of guilty was freely entered.

▮ The record here refutes appellant's basic contention that his former counsel, Mr. Riley, held out anything to him concerning whether the sentences would run concurrently rather than consecutively, upon which appellant relied to his prejudice when he entered his guilty pleas. There is no evidence that Mr. Wilson ever advised appellant as to how the sentences would run. But more importantly, the record shows that appellant was asked by the court whether any promises or threats were held out to him to get him to make the pleas. In the evidentiary hearing on the present motion he conceded that to be true. Thus, the court's finding that neither of appellant's appointed counsel exercised coercion or inducement upon him to plead guilty is supported by the record.

▮ The sentences here, being for separate offenses, were mandatorily required to be consecutively imposed under § 546.480, RSMo 1959, V.A.M.S., which provides: "When any person shall be convicted of two or more offenses, before sentence shall have been pronounced upon him for either offense, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior conviction." State v. Harris, 336 Mo. 737, 81 S.W.2d 319, 322; State v. McClanahan, Mo., 418 S.W.2d 71, 74 [3–5]. In the Harris case, the court evidently overlooked or misconstrued this statute and imposed sentences aggregating two hundred fifty years under the section when he intended to impose only fifty years. In the McClanahan case, the court intended to impose a total of ten years, but under the statute the sentences were a total of twenty years. Under the particular facts of those two cases it was held that the defendants were entitled to withdraw their guilty pleas. Here there is no evidence that the court erroneously applied the statute or intended to impose less than twenty-five years for the offenses. The judgment recites that the sentences shall run consecutively.

The court's findings in all respects are not clearly erroneous. Supreme Court Rule 27.26(j), V.A.M.R.; State v. Mountjoy, Mo., 420 S.W.2d 316.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.