STATE of Missouri, Plaintiff-
Respondent,

v.

Kenneth G. NORRIS,
Defendant-Appellant.

No. 10422.

Missouri Court of Appeals,
Southern District,
Division 2.

Feb. 13, 1979.

Motion for Rehearing or Transfer to Su-
preme Court Denied Feb. 26, 1979.

Application to Transfer Denied
April 10, 1979.

John D. Ashcroft, Atty. Gen., Weldon P. Perry, Jr., Steven Steinhilber, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Robert P. Baker, Sarcoxie, for defendant-appellant.

MAUS, Judge.

The defendant was charged under the Second Offender Act with burglary in entering the premises of J. W. Jones and stealing a welder the property of Clyde R. Jones. The Second Offender Act, § 556.280 RSMo 1969, was found to be applicable. Upon a verdict of guilty the trial court assessed defendant's punishment at five years imprisonment for burglary and five years imprisonment for stealing. The sentences are to run concurrently. Defendant appeals.

Defendant has presented five points for review. At the outset, we note that the motion for new trial was filed on the thirty-second day after the verdict. Following the verdict the defendant requested thirty addi-

tional days for filing his motion. The trial court granted thirty days. This was not expressly stated to be thirty days in addition to the ten days provided by Rule 27.20. However, the state makes no assertion of a late filing. The motion was filed within the time that could have been granted by the trial court. The trial court heard and determined the motion apparently construing its order to mean thirty additional days. We see no reason to otherwise construe the record. *State v. Smith,* 518 S.W.2d 665 (Mo.App.1975).

■ Even though the defendant offered no evidence but stood on his motion for acquittal, the evidence will be considered most favorably to the state, with all reasonable inferences therefrom and we do not believe that *State v. Truster,* 334 S.W.2d 104 (Mo.1960) cited by defendant requires us to do otherwise. *State v. Franco,* 544 S.W.2d 533 (Mo.banc 1976); *State v. Colthorp,* 437 S.W.2d 75 (Mo.1969). The defendant questions the sufficiency of the evidence to establish that he was one of two men who stole a welder from a machine shop. A review of the evidence will be primarily directed to facts bearing on that issue.

The 240 acre Jones farm is located in the southeast part of Lawrence County approximately ¾ mile south of Highway ZZ. It is northeast from Aurora and southwest from Marionville. A county road runs north and south on the east side of the Jones farm. There are two sets of improvements. Son, Clyde R. Jones, lived at the north set at which there was located a large barn and machine shed.

On the day in question, J. W. Jones was going to see a nearby neighbor. His route to the neighbor's home was ¾ mile north on the county road, a right (east) turn on Highway ZZ and then about ¾ mile east to the neighbor's. He left home a few minutes before 4:00 p. m. At the intersection of the county road and Highway ZZ he met an automobile coming from the west, which

was a 1954 Chevrolet, blue in color with a light top. The Chevrolet turned south on the county road toward the Jones farm just as Jones turned east on Highway ZZ. Jones briefly observed the driver and a passenger.

Upon arriving at the neighbor's, Jones saw that the neighbor's pickup was not there. Jones concluded the neighbor was not at home, turned around and started back to his home. Upon approaching, Jones saw the Chevrolet parked in front of the machine shed, backed up to big double doors. The trunk was open. He saw a man in the driver's seat and another at the rear of the car. The man outside tossed something in the trunk and got in "real fast". As the automobile was leaving when Jones drove in the machine shop lot, Jones determined to try and mark it with his truck. He put his truck in reverse and scraped the right side of the Chevrolet. After the vehicles disengaged, Jones turned around and chased the Chevrolet north on the county road to a point one-half mile north of Highway ZZ. He got the license number on the Chevrolet which was PZ2–032.

From his brief observation at the intersection and upon approaching the machine shed, J. W. Jones described the passenger as a man having a full beard about an inch long, ungroomed, almost Afro style hair, wearing dark clothing but no hat. The driver was described as having a light beard, hair not as long as the passenger but probably collar length, wearing a light weight stocking cap or cap of some kind. The passenger appeared to be taller than the driver, although neither was a large man. Jones could not identify defendant as one of the two men at the machine shop.

Upon returning to his farm, Jones found the lock on a small door on the south side of the machine shed had been forced open and a welder owned by Clyde R. Jones kept in the shed was missing. A black low-cut men's oxford shoe was found in front of the shed.

Helen Walters lived in the western part of Christian County approximately 1½

miles north and 4½ miles east of the Jones farm. She had known the defendant for approximately 20 years. On the day in question the defendant came to her house between 4:00 and 4:30 p. m. She observed an older, middle 50's, car. Her son, who saw the defendant after being awakened, estimated the time as 3:30 p. m. As the defendant walked toward the house Mrs. Walters, who didn't see too well, didn't recognize him at first because of his long hair and the fact he had on a little round hat with a brim, a camouflage hat, pulled down over his ears. He did not have a beard. Defendant asked to use the phone to call his wife and was permitted to do so. He told her to bring his shoes and come and get him and he gave her directions. Helen Walters saw he was wearing only one shoe. Later, a car drove up and defendant and a man from the older car got in and left.

At about 5:00 p. m. Lawrence County Investigator Tatum was going from Aurora to search for the Chevrolet automobile. On leaving Aurora he saw Mrs. Norris driving a blue Buick west on U. S. Business Route 60 entering Aurora from the east. Defendant, who he observed had shoulder length hair, and a man with a beard, Ralph Scott, Jr., were her passengers.

Officer Ellis, who was parked at the intersection of business Route 60 and Elliott, saw the Norris blue Buick come from the east and turn south toward the Norris home on Elliott. He identified Mrs. Norris, defendant and Ralph Scott, Jr. Defendant had hair to his shoulders, but no beard as such. Between 5:00 and 5:30 p. m. Stockton saw three people walking into the Norris house. Defendant had long hair but no beard, but he couldn't see if he was clean shaven.

Ralph Scott, Jr. lived almost directly across the street from the defendant. The Chevrolet was licensed to him. It had been seen in Norris' yard two days before the incident. Scott and defendant had been observed in the Chevrolet with Norris driving.

About 6:00 p. m. Tatum located the Chevrolet at the Walters' residence and it was taken by the Sheriff of Christian County to Ozark. The next day, under the authority of a search warrant, the trunk was pried open. The missing welder was in the trunk.

The first contention of the defendant to be considered is that the evidence is insufficient to support his conviction. Considering the evidence most favorably to the state, the salient facts a jury could reasonably have found from the evidence are: the defendant was an associate of Ralph Scott, Jr.; the automobile used in the theft was owned by Ralph Scott, Jr.; that automobile had been in defendant's possession and he had driven it within two days before the theft; two men within the general description of defendant and Ralph Scott, Jr. were at the scene; a man's shoe was found at the scene; within a few minutes after the theft defendant and Ralph Scott, Jr. arrived at the Walters' home in the Chevrolet with the stolen welder in the trunk; the defendant was wearing one shoe.

■ The defendant emphasizes that this is a circumstantial evidence case and asserts inconsistencies in the state's evidence. It is true in a circumstantial evidence case the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence. *State v. Franco,* supra, 544 S.W.2d 533. However, the inconsistencies asserted by defendant are not of basic facts but such things as estimates of time and physical descriptions. Such inconsistencies are for the jury. He also urges hypothetical conclusions from the evidence showing nonparticipation in the crime. However, our Supreme Court has said:

"In a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty [sic], and they need not demonstrate impossibility of innocence. . . . The mere existence of other possible hypothesis is not

enough to remove the case from the jury." *State v. Thomas,* 452 S.W.2d 160, 162 (Mo.1970).

Each case of circumstantial evidence is to be considered upon its peculiar facts and circumstances. However, the cases of *State v. Ross,* 507 S.W.2d 348 (Mo.1974); *State v. Fields,* 442 S.W.2d 30 (Mo.1969); and *State v. Boothe,* 364 S.W.2d 569 (Mo.1963) are persuasive. We hold that the evidence meets the required tests and is sufficient to support the conviction.

■ The defendant claims error in the admission in evidence of the shoe because a proper chain of custody was not established. Jones testified the shoe in front of the machine shed was picked up by Deputy Morris A. Candlish. Candlish testified he marked the shoe with the initial of his first name and gave it to Investigator David Tatum on April 7, 1975. Tatum testified Candlish gave him the shoe on April 10, 1975 and had marked it by his initials. Defendant seizes upon the difference in dates as a break in the chain. The shoe does bear the initial M. and initials D. T. The identification of an exhibit need not be wholly unqualified. The shoe was sufficiently identified for consideration by the jury. *State v. McKinney,* 554 S.W.2d 488 (Mo. App.1977).

■ Defendant urges error in giving mandatory MAI–CR 1.02. He raised his objection by a motion in limine and has preserved that objection. The portion of MAI–CR 1.02 he finds offensive reads:

"The defendant denies the charge. Thus, an issue of fact has arisen which must be decided by a jury, subject to instructions concerning the law which the court will give to the jury."

The defendant offered an alternative— "The defendant has pleaded not guilty. Thus issues of fact have arisen which must be decided by a jury."

Defendant correctly asserts that he has not entered a denial but a plea of not guilty. He asserts by the use of the words "defendant denies the charge" a jury would expect to hear from the stand evidence of that denial and draw an unfavorable inference from its absence. He also asserts that since there are two charges confusion will result from reference to "the charge" and "an issue" of fact.

The instructions are to be considered as a whole, including the following portions of other instructions:

"The fact that the defendant has been charged with an offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty." MAI–CR 2.20.

"The defendant is charged with two separate offenses: burglary and, also, stealing in connection with the burglary. Each of those two charges and the evidence and law applicable to them should be considered separately. . . . " MAI–CR 2.74.

"You must not single out certain instructions and disregard others . . . ." MAI–CR 2.03.

The Supreme Court has directed that the trial court shall give MAI–CR 1.02. Even if we were inclined to do otherwise, which we are not, we certainly do not find the trial court erred in following this direction. Further, considering all of the instructions we do not find MAI–CR 1.02 to be reasonably subject to the finely drawn criticisms offered by the defendant. To the contrary, we find MAI–CR 1.02 meaningfully and fairly instructed the jury.

The point raised by defendant in regard to the proof required under the Second Offender Act is not apt to occur in a second trial. We find it unnecessary to consider the point.

The defendant's final assertion of error presents a difficult and to this date little developed point of law which was thrust upon the learned trial judge under the exigencies of trial. That point arose in the following manner. The state offered and there was received in evidence the shoe

found in front of the machine shed. After the state rested the defendant offered to put on that shoe to demonstrate that it was obviously too large for the defendant. The state objected unless the defendant was sworn as a witness. The offer was refused.

A succinct statement of the question to be considered by this court is: Should the defendant have been permitted to put on the shoe before the jury without being sworn as a witness? Or, stated in another way, had the defendant put on the shoe before the jury would he have waived the privilege against self-incrimination?

The history of the privilege against self-incrimination is well known. 8 Wigmore, Evidence, § 2250 (McNaughton rev. 1961). It is embodied in the 5th Amendment to the Constitution of the United States which in part reads as follows:

"No person . . . shall be compelled in any criminal case to be a witness against himself, . . . " U.S.Const. Amend. V.

The 5th Amendment is applicable to proceedings in the state courts. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *State ex rel. Howard v. Allison,* 431 S.W.2d 233 (Mo.App.1968). The privilege finds similar expression in Mo.Const. Art. I, § 19; § 546.270, RSMo 1969.

First, we are confronted with the question of whether or not the defendant could be compelled to be sworn before invoking the privilege of the 5th Amendment. If so, the trial court was correct. It is axiomatic that one summoned as a witness may be required to be sworn before seeking the protection of the 5th Amendment. *State v. Phillips,* 511 S.W.2d 841 (Mo.1974); *State v. Yager,* 416 S.W.2d 170 (Mo.1967); 81 Am.Jur.2d, Witnesses, § 36. The same is true of a lawyer who is the subject of disbarment. *In re West,* 348 Mo. 30, 152 S.W.2d 69 (banc 1941).

We find no authority in this state squarely holding that an accused in a criminal proceeding may not be compelled to be sworn before being extended the privilege of the 5th Amendment. There are numerous expressions to that effect in cases such as *State v. Hutchinson,* 458 S.W.2d 553 (Mo. banc 1970); *State v. Denison,* 352 Mo. 512, 178 S.W.2d 449 (1944) and *State v. Dean,* 400 S.W.2d 413 (Mo.1966).

To extend that right to an accused is within the spirit of the privilege. It is well established that a comment upon the failure of a defendant to testify is barred. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Howard,* 540 S.W.2d 86 (Mo.banc 1976). To require a defendant to be sworn in front of a jury and then invoke the 5th Amendment would be more prejudicial. If a defendant is sworn and testifies he could be impeached by prior convictions. *State v. Williams,* 525 S.W.2d 395 (Mo.App.1975); *State v. Morris,* 460 S.W.2d 624 (Mo.1970); *State v. Swisher,* 364 Mo. 157, 260 S.W.2d 6 (banc 1953), and comment could be made upon his failure to testify concerning incriminating facts, *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *State v. Stidham,* 305 S.W.2d 7 (Mo.1957), aff'd. 449 S.W.2d 634 (1970), which would be equally devastating to a defendant.

The majority of the decisions in other states are to the effect that an accused may not be compelled to be sworn. They have been summarized.

"(a) This being so, the prosecution could nevertheless on principle have a right at least to call him to be sworn because, as with an ordinary witness, it could not be known beforehand whether he would exercise his privilege. But no court has sanctioned this application of the principle. The contrary is universally held." 8 Wigmore, Evidence, § 2268 2.(a) (McNaughton rev. 1961).

"As already observed, the Fifth Amendment and various state constitutions provide that no person shall be compelled in any criminal case to be a witness against himself. Under this prohibition,

the right of an accused *not to take the stand* as a witness against himself applies only to criminal, quasi-criminal, and penal proceedings, including a proceeding civil in form for forfeiture of property by reason of the commission of an offense, but not a proceeding in which the penalty recoverable is civil or remedial in nature." 81 Am.Jur.2d, Witnesses, § 32 (1976) at p. 58–59.

 We perceive the proper rule to be that an accused may not be compelled to be sworn before being extended the privilege of the 5th Amendment.[1]

 The State contends that the offer was properly refused because trying on the shoe would be equivalent to testifying. If that be the case, the State could not have compelled the defendant to try on the shoe. But, it is well established that the protection of the 5th Amendment extends to evidence "testimonial" and not "demonstrative" in nature. *State v. Proctor,* 535 S.W.2d 141 (Mo.App.1976) and 8 Wigmore, Evidence, § 2263 (McNaughton rev. 1961). Decisions establish that the State may compel a defendant to provide the following demonstrative evidence: Handwriting, *State v. Boley,* 565 S.W.2d 828 (Mo.App. 1978); to walk in the courtroom to display a limp, *State v. Proctor,* supra; submitting to photographs, *Riley v. State,* 475 S.W.2d 63 (Mo.1972); courtroom observation, *State v. Jackson,* 444 S.W.2d 389 (Mo.1969); to speak, *State v. Cook,* 440 S.W.2d 461 (Mo. 1969); to try on a hat, *State v. Dean,* supra. The Supreme Court of the United States has recognized the distinction and approved the following: trying on a blouse, *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); putting tape on face and speaking, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 1149 (1967); handwriting, *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Rule 25.35(B) makes provision for the state

to require the defendant to provide many specified examples of demonstrative evidence, including "Try on articles of clothing."

There is a dearth of authority on the subject. Counsel for the parties profess their inability to find a case in point. Our research has unearthed five cases. In *People v. Harris,* 46 Ill.2d 395, 263 N.E.2d 35, 37 (1970), the defendant wanted to display his peculiar teeth to the jury to establish he was not the guilty party. The request was refused and the Court said:

> "As to appellant's argument that he should have been permitted to exhibit his teeth to the jury in a certain manner, without waiving his fifth-amendment privilege against self-incrimination, we find no merit in this argument."

In *Machin v. State,* 213 So.2d 499 (Fla. App.1968), the defendant offered to run to establish he did so without a limp and the offer was refused unless the defendant submitted to cross-examination. The Court said this would be a form of testimony and cited *Odom v. State,* 109 So.2d 163 (Fla. 1959) and *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926). *Odom* dealt with a waiver by verbal testimony and *Raffel* held that by taking the stand a defendant waives the privilege and is subject to proper cross-examination and that comment could be made upon his failure to testify concerning incriminating facts.

In *State v. Mayer,* 154 Wash. 667, 283 P. 195 (1929), the defendant wrote his name in the presence of the jury and the court held that he had in effect testified and therefore the trial court was not required to give an otherwise mandatory instruction that there was no inference of guilt if the defendant did not testify.

The question has been more thoroughly and persuasively analyzed by the United

---

1. An instruction to that effect was approved in *Caton v. United States,* 407 F.2d 367 (8th Cir. 1969).

948

States Court of Appeals, Third Circuit. *United States ex rel. Fioravanti v. Yeager,* 404 F.2d 675 (3 Cir. 1968), cert. den. 396 U.S. 860, 90 S.Ct. 131, 41 L.Ed.2d 112 (1969) presented a case in which the defendant had tried on a pair of pants to demonstrate they did not fit. The trial court then commented to the jury that the defendant had failed to deny other major evidence against him. The court held the action of the defendant was testimonial and the charge to the jury correct.

A similar question was before the same court in *United States ex rel. Mitchell v. Pinto,* 438 F.2d 814 (3 Cir. 1971), cert. den. 402 U.S. 961, 91 S.Ct. 1622, 29 L.Ed.2d 124. In that case the defendant at the request of counsel had risen from his seat and stood by a witness to demonstrate a resemblance. The trial court then told the jury the defendant's failure to testify might be considered as evidence against him. The court found this comment to be condemned by *Griffin v. California,* supra, and the action of the defendant to be demonstrative and not testimonial and he did not thereby waive the 5th Amendment. To the extent of the inconsistency, it declared *Fioravanti* should not be followed. In so holding the court said:

"In the present case, the prosecution would clearly have had the right, if it so desired, to require Mitchell to rise from his seat and stand next to the witness then under cross-examination for comparison by the jury. The Self-Incrimination Clause would not have precluded such compulsion precisely because the evidence compelled was not testimonial or communicative. By the same token, voluntary participation by a defendant in such non-testimonial conduct cannot properly be analogized to such testifying as occurred in the *Caminetti* case." *United States ex rel. Mitchell v. Pinto,* supra.

 A defendant may not be coerced into a waiver of the privilege nor compelled to waive it by improper conditions. *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977).

 In civil actions a party does not waive a privilege by putting on evidence outside the scope of a privilege. Deadman's statute, *Saupe v. Kertz,* 523 S.W.2d 826 (Mo.banc 1975); husband-wife privilege, *Revercomb v. Revercomb,* 222 S.W. 899 (Mo. App.1920); attorney-client, *Simmons v. Universal Life Ins. Co.,* 227 Mo.App. 1238, 61 S.W.2d 382 (1933). The filing of a motion under Rule 27.26 alleging the ineffective assistance of counsel is not a total waiver of the attorney-client privilege. "Appellants concede that trial counsel may testify at 27.26 hearings when the issue pertains to effective assistance of trial counsel, *Hand v. State,* Mo., 447 S.W.2d 529, *State v. Rose,* Mo., 440 S.W.2d 441, but say that the waiver of privilege does not extend to all matters within the ambit of the attorney-client relationship, and we agree with this general proposition." *Veneri v. State,* 474 S.W.2d 833, 840 (Mo.1971).

 It is clear that if the state had desired it could have compelled the defendant to try on the shoe without being sworn and waiving the privilege of the 5th Amendment. It is only fair that when the defendant desired to try on the shoe he should have been permitted to do so without being sworn and waiving the privilege of the 5th Amendment.

 While we do not profess to know if the shoe would have fit or the effect of the tendered demonstration upon the jury, it is fundamental that the defendant must be permitted to present competent, material evidence in his defense. *State v. Brown,* 543 S.W.2d 56 (Mo.App.1976). The state placed the shoe in evidence. It was obviously an important link in its case.

 The defendant attempted to refute an inference the shoe was his by trying the shoe on. The general rule concerning explanatory evidence has been stated:

" 'Explanatory evidence. As a general rule, evidence explaining evidence previously introduced, or showing that the inference arising or sought to be drawn therefrom is not warranted, is admissible; * * *. This rule is especially applicable where accused seeks to explain incriminating evidence introduced by the state, and applies even though the evidence sought to be explained was improperly admitted. Common illustrations of the rule are found in the reception of evidence * * * of flight, of the commission of other offenses * * *.' " State v. Campbell, 533 S.W.2d 671, 675 (Mo.App.1976) quoting 22A C.J.S. Criminal Law § 601 at pp. 404–406.

The demonstrative explanatory evidence was relevant and its exclusion in this case was prejudicial error. We must reverse and remand the case for a new trial.

BILLINGS, P. J., and HOGAN, J., concur.