**STATE of Missouri, Respondent,**

v.

**Kevin E. RODGERS, Appellant.**

**No. WD 56196.**

Missouri Court of Appeals,
Western District.

Aug. 17, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 5, 1999.

Application for Transfer Denied
Nov. 23, 1999.

Stephen M. Patton, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kristin M. Frazier, Asst. Atty. Gen., Jefferson City, for respondent.

FOREST W. HANNA, Judge.

A jury found Kevin Rodgers guilty of forgery. § 570.090.1(4), RSMo 1994. He was sentenced as a prior and persistent offender to a term of 10 years imprisonment. Mr. Rodgers contends that the trial court erred in not allowing him to stand before the jury to display distinguishing marks on his face, and in allowing a police officer to refer to the defendant's "mug shot."

On January 8, 1997, a man who was subsequently identified as the defendant, drove up to Boatmen's Bank drive-thru window and presented a check, deposit slip, and driving license to the bank teller. The bank teller was suspicious and, therefore, took the check and other documentation to her supervisor, Bridgette Elliott. Ms. Elliott contacted the business from whose account the check had been drawn and was informed that the check had been stolen. Ms. Elliott then called the police, and went back to the drive-thru window. She explained that there had been a short delay and asked the defendant to come inside. She wanted the defendant inside so that the surveillance cameras could take a picture of him. After a short time, the defendant became agitated and started yelling that he wanted his check, deposit slip, and driving license back. He eventually left the bank without them. As he was leaving the bank, he hit the automobile of another bank customer and continued to drive away.

The state proved that the check was stolen from the account of Armour Transmissions. The driving license belonged to a Timothy Gerard Kirk. Mr. Kirk testified that he lost the license in the latter part of 1996. The defendant was identified from surveillance tapes as the individual who attempted to cash the check. A police officer obtained a recent photograph of the defendant and arranged a photo line-up. Ms. Elliott identified the defendant as the individual who passed the check.

The defense at trial was misidentification. The defendant presented three wit-

nesses that testified that he was not the individual who presented the check for payment. Also, both parties acknowledge that the defendant has facial characteristics and a tattoo that was not observed by either the state's primary witness or the bank's surveillance photos.

At trial, five photographs taken from the surveillance tape were introduced into evidence. Defense counsel asked the court to allow the defendant to approach the jury and stand within four feet of the jury box in order for the jurors to observe him. The prosecutor objected, arguing that this conduct would be demonstrative evidence, a form of unsworn testimony. The trial court sustained the objection. The defendant maintains that the court's ruling—in refusing him permission to stand in front of the jury so that they could see that the individual in the surveillance tape did not resemble him—denied him of his right to present evidence.

In *State v. Norris,* the state presented evidence that a shoe found at the scene of the crime belonged to the defendant. 577 S.W.2d 941, 945 (Mo.App.1979). The defendant was seen a short time later with only one shoe on. *Id.* at 944. Defendant sought to refute the evidence by trying on the shoe in front of the jury to show that it was too large for his foot. *Id.* at 946. The trial court refused to allow the defendant to try on the shoe unless he was first sworn as a witness. *Id.* Upon review, the appeals court held that the defendant should have been permitted to put on the shoe before the jury without being sworn as a witness and, therefore, the trial court's ruling was reversible error. *Id.* The court reasoned that 5th Amendment protection extended to "testimonial" evidence, not "demonstrative" evidence. *Id.* at 947–48.

In reaching that decision, the court reviewed a number of cases in which the defendant was compelled to produce demonstrative evidence. *See United States v. Wade,* 388 U.S. 218, 220, 87 S.Ct. 1926, 1928, 18 L.Ed.2d 1149, 1153 (1967)(putting tape on the defendant's face during a lineup and having him speak the words used by robber at bank); *Holt v. United States,* 218 U.S. 245, 252, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1028 (1910)(having the defendant try on a blouse); *State v. Jackson,* 444 S.W.2d 389, 392 (Mo.1969)(arguing that the defendant, as he sat in the courtroom, appeared in good health and able bodied); *State v. Cook,* 440 S.W.2d 461, 463 (Mo.1969)(having the defendant speak the victim's name); *State v. Walls,* 637 S.W.2d 812, 814 (Mo.App.1982)(ordering the defendant to walk within six to ten feet of the jury box, wearing the robber's blue pants, white T-shirt, and baseball cap); *State v. Morton,* 684 S.W.2d 601, 606 (Mo.App.1985)(requiring the defendant to speak in front of the jury); *State v. Owens,* 620 S.W.2d 448, 451 (Mo.App.1981)(ordering the defendant to stand before the jury to allow a witness to inspect a tattoo on the defendant's face); *State v. Hubbard,* 659 S.W.2d 551, 559 (Mo.App.1983)(compelling the defendant to bare his arms to expose tattoos); *State v. Proctor,* 535 S.W.2d 141, 144 (Mo.App.1976)(asking the defendant to walk in a courtroom to display a limp).

In *United States ex rel. Mitchell v. Pinto,* the court addressed this issue and, like *Norris,* observed that there is a controlling difference between demonstrative evidence and testimonial evidence. 438 F.2d 814, 817 (3rd Cir.1981). Specifically, the court concluded that the 5th Amendment clause does not preclude the prosecution from requiring that a defendant rise from his seat in order for the jury to observe his physical appearance, because the evidence is not testimonial. *Id.*

■ It is apparent from the holdings in these cases that the prosecution has the right to compel the defendant to be viewed by the jury for comparison purposes. By the same token, the defendant's voluntary participation does not violate the state's right to cross-examine the defendant. Thus, we hold that the defendant had the right to voluntarily stand before the jury for comparison purposes where identifica-

tion was at issue in the case. The *Norris* court's rationale—"what's good for the goose is good for the gander"—makes sense and compels our holding here.[1]

■ The question now becomes whether the trial court's refusal to permit the defendant to stand before the jury for comparison purposes was an abuse of its discretion. *See State v. Miller,* 778 S.W.2d 292, 293 (Mo.App.1989)(ruling that demonstrations before the jury are matters within the trial court's discretion). The relevant facts with regard to this issue are as follows.

At trial, defense counsel requested that the defendant be allowed to stand within four feet of the jury so that they could observe him. The request was made without specifying for the court what counsel desired for the jury to observe: birthmarks, scars, tattoos, or beards. The trial court sustained the state's objection, noting that the defendant had been sitting in front of the jury within about ten feet during the trial and that the jury had walked within three or four feet of him each time they entered the courtroom. Accordingly, the trial court then suggested, when it called the jury back into the courtroom, that the defendant could sit right where he was and that the jury could observe him. When the judge asked, "How's that?" the defense made no response. Moreover, there was no further argument, consent or explanation as to what specifically the defendant intended for the jury to observe.

From his closing argument and his brief before this court, we now understand that defense counsel intended for the jury to observe the defendant's facial scar, his spotty beard, and a tattoo on his hand. Defense counsel also mentioned in closing argument that the perpetrator was described as wearing thick eyeglasses, and that the defendant does not wear glasses.

There are two problems with the defendant's argument that the trial court abused its discretion by failing to allow him to stand before the jury. First, defense counsel failed to inform the court what features he wished the jury to compare. This deficiency led the court to believe that it had remedied the situation by allowing the jury to observe the defendant. Reviewing the dialogue between the trial court and counsel warrants the inference that the court's resolution was satisfactory and, for all purposes, seems to have been accepted by the defendant as satisfactory. As a result, this point has not been preserved for appeal. *State v. Knowles,* 946 S.W.2d 791, 795 (Mo.App. 1997).

■ Secondly, we note, *ex gratia,* there is no prejudice to the defendant. It is clear from the evidence that there was no dispute that certain discrepancies of the defendant's physical appearance existed between the surveillance photos and the eyewitness' testimony. In closing argument, defense counsel specifically noted that the defendant does not wear glasses, that he has a scar, that he does not have a birthmark, and that his beard is different from the surveillance photos. Also, the identifying witness, Ms. Elliott, acknowledged these discrepancies. She testified that she had not seen the defendant's facial scars or any tattoos on his hand on the day of the crime. She testified that the perpetrator was wearing thick glasses. Finally, the trial judge commented that the jury had the opportunity to observe the defendant throughout the entire trial and make his or her own determination of his particular characteristics. Point denied.

■ In the defendant's second point, he contends that Detective Matthews' testimony about a current "mug shot" of the defendant was evidence of other crimes.

---

1. Ray, English culinary proverb, 1670: "What is sauce for the goose is sauce for the    gander."

At trial, Detective Matthew was asked the following by the state:

> Q. As a result of having the name, were you able to obtain a recent photograph of Kevin Rogers, the defendant, to utilize further in your investigation?
>
> A. Yes. I'm sorry *we did not have a current mug shot on file.* We had....

(Emphasis added). The defendant's objection to the testimony was overruled.

■ Evidence of other crimes can have a "dangerous and misleading probative force" and, therefore, "its admission should be subjected by the courts to rigid scrutiny." *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). Enough has been written about the term "mug shot" to demonstrate that it should not be employed in a criminal trial. *See State v. Newman*, 605 S.W.2d 781, 788 (Mo.1980)(citing *State v. Rutledge*, 524 S.W.2d 449, 458 (Mo.App.1975); *State v. Harris*, 534 S.W.2d 516, 518–521 (Mo.App. 1976); and *State v. Lorenze*, 592 S.W.2d 523, 529 (Mo.App.1979)). There is a disturbing number of cases where witnesses made improper references to "mug shots" or photos in the police files. We have repeatedly expressed our disapproval of the use of the term "mug shots." *See State v. Burns*, 581 S.W.2d 590, 593 (Mo. App.1979); *State v. Rutledge*, 524 S.W.2d at 458. Nonetheless, we have been reluctant to conclude that this error necessarily connotes the commission of other crimes. *Burns*, 581 S.W.2d at 593. Our courts have stated that we are not ready to accept, without proof, the notion that jurors are likely to believe that "persons whose photographs are on file with the police department have committed other crimes." *Harris*, 534 S.W.2d at 520. However, we cannot ignore the obvious that the terms "mug shot" and "mug file" carry unfortunate connotations for some jurors. Thus, the use of a mug shot as evidence must be examined in the light of the facts and circumstances of each case. *State v. Vanzant*, 814 S.W.2d 705, 707 (Mo.App.1991)(citing *State v. Morrison*,

545 S.W.2d 376, 378 (Mo.App.1976)). *See also State v. Tivis*, 933 S.W.2d 843, 846 (Mo.App.1996).

■ An inference suggesting prejudicial evidence of other crimes only arises from such a reference if it discloses a defendant's prior arrests or convictions. *See State v. Young*, 943 S.W.2d 794, 798–99 (Mo.App.1997); *State v. Tivis*, 933 S.W.2d 843, 846 (Mo.App.1996); *Harris*, 534 S.W.2d at 519. It is the testimony of witnesses pertaining to the mug shot which presents the potential for tainting the record. *State v. Phillips*, 723 S.W.2d 524, 525 (Mo.App.1986). Knowledge that the defendant is identified in connection with another crime could readily tip the scales against the defendant on a closely contested issue.

■ The officer's use of the term "mug shot" was unnecessary and the court was in error in overruling the objection. Testimony concerning the use of mug shots, which discloses information that a defendant has committed other crimes, is improper. *State v. McCauley*, 831 S.W.2d 741, 742 (Mo.App.1992). However, the mere fact that a police department previously had on file a photograph of a defendant does not lead to the inference that the defendant has committed prior crimes. *Harris*, 534 S.W.2d at 520. In *Harris*, the court examined cases from other jurisdictions addressing the context in which the term "mug shots" was used at trial. *Id.* at 520–21. The court drew a distinction between the term as used in the context of identification and the use of the term relating to past criminal activities. *Id.*

In *Tivis*, a police officer testified that he had obtained the defendant's photo from a "mug file." 933 S.W.2d at 845. This court found that the officer's use of the term "mug file" was unnecessary, but ultimately concluded that jurors are not likely to infer that persons whose photographs are on file with the police department have committed other crimes. *Id.* at 846. Specifically, the court explained that "testimo-

ny concerning the use of mug shots which discloses information that a defendant has committed other crimes is improper. However, the mere fact that a police department previously had on file a photograph of a defendant does not lead to the inference that the defendant has committed prior crimes." *Id.*(citing *McCauley,* 831 S.W.2d at 742).

In the present case, Detective Mathews' testimony that she did not have a current "mug shot" of the defendant on file was an isolated comment and did not connect the defendant with a specific crime. We conclude that the trial court's erroneous ruling did not prejudice the defendant.

■ However, our holding is not meant to minimize the long standing rule that, in general, evidence which seeks to demonstrate that the defendant has committed other crimes is inadmissible. *State v. Shaw,* 636 S.W.2d 667, 671–72 (Mo. banc 1982); *State v. Wright,* 582 S.W.2d 275, 277 (Mo. banc 1979). The frequency with which the error is raised on appeal suggests that it is prudent for counsel to exercise greater caution in preparation of the state's witnesses, and when questioning police witnesses, about photo line-ups. It is a point of error that is easily avoided and interferes with the orderly and fair trial of cases. Point denied.

Judgment of the trial court is affirmed.

EDWIN H. SMITH, P.J., and SPINDEN, J., concur.