Jonathan Jay SCHUMACHER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6843.

Court of Appeals of Alaska.

Oct. 27, 2000.

---

G. Blair McCune, Deputy Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

W.H. Hawley, Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

A jury convicted Jonathan Jay Schumacher on six felony charges for sexually abusing three of his children over a two-year span. First, Schumacher claims that the superior court should have dismissed his indictment *sua sponte.* But this claim is waived because it was never raised below. Second, Schumacher contends that the superior court should have declared that the victims were incompetent to testify or conducted a "taint hearing," *sua sponte,* to decide if the young victims were competent to testify. But whether a taint hearing is required is a debatable question of law. Because reasonable judges could disagree over the need for a taint hearing, the court's failure to order one

was not plain error. Third, Schumacher claims that a detective should not have been permitted to testify that he observed Schumacher reach into his groin area with his hands. Schumacher was obese and claimed at trial that it was physically impossible for him to reach his groin. Therefore, Schumacher's ability to reach his groin was relevant and it was not an abuse of discretion to permit the detective to testify to his personal observations. Next, Schumacher contends that the superior court should have allowed him to show the jury that, contrary to the detective's testimony, Schumacher could not reach his groin. We agree with the superior court that Schumacher would have to be under oath and subject to cross-examination to be allowed to conduct such a demonstration. Finally, Schumacher claims that his composite 15–year term to serve is excessive. But we conclude Schumacher's sentence is not clearly mistaken. Therefore, we affirm his convictions and sentence.

### Facts and proceedings

Between January 1, 1994, and January 25, 1996, Schumacher and his three sons, A.S., C.S., and L.S., lived together in Kodiak. On January 25, 1996, the Division of Family and Youth Services removed the three boys from Schumacher's home. DFYS acted because of reports made by the children's mother, Kaylynn Nielson, and aunt, Cheryl Ann Schumacher (Schumacher's sister), to Kodiak Police Detective David DeCoeur and DFYS social worker Mary Gray. Apparently, the boys asked their mother and aunt for help to get away from what their father "was doing to them."

Following the State's investigation, the grand jury returned an indictment against Schumacher for sexually abusing his sons. The eight-count indictment charged that in the period from January 1, 1994, to January 25, 1996, Schumacher abused his three sons by engaging in acts of sexual contact and sexual penetration, including fellatio, digital anal penetration, and penile anal penetration.

At trial, the jury convicted Schumacher on four counts of first-degree sexual abuse of a

minor[1] and one count of second-degree sexual abuse of a minor.[2] Superior Court Judge Larry D. Card imposed a composite term of 19 years with 4 years suspended, a net 15-year term to serve.

*Discussion*

*Should the trial court have dismissed Schumacher's indictment sua sponte?*

■ Schumacher argues that Judge Card should have dismissed the grand jury indictment *sua sponte*. Schumacher argues that his sons' testimony was not reliable and that the State did not present exculpatory evidence. Schumacher did not move for this relief in the superior court. The State argues that the claim has been waived because it was not asserted in the trial court. We agree.

Alaska Criminal Rule 12(b) provides in part:

Pre-Trial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Any or all of the following shall be raised prior to trial:

. . . .

(2) Defenses and objections based on defects in the indictment[.]

Schumacher's attack on the indictment was not made before trial. Alaska Criminal Rule 12(e) provides in part:

Failure by the defendant to raise ... objections ... which must be made prior to trial ... shall constitute waiver thereof[.]

Because Schumacher did not move to dismiss the indictment before trial, his objection is waived.[3]

*Should the superior court have declared a mistrial, sua sponte, or conducted a "taint hearing"?*

■ Before trial, Schumacher's attorney filed a motion to interview the children or, alternatively, for an expert psychiatric examination of the children. Schumacher claimed that the children's grand jury testimony was unreliable because of inconsistencies contained in two statements to the authorities and in their grand jury testimony. Schumacher then withdrew his motion, apparently because the guardian ad litem had agreed to permit his attorney to interview the victims. The parties subsequently stipulated that the transcripts and tapes containing the statements would be admitted at trial. The court admitted the transcripts and tapes and agreed to instruct the jury that they could listen to the tapes if they wished.

Schumacher argues that the boys' testimony was so obviously unreliable that it was plain error for Judge Card not to have *sua sponte* declared a mistrial or at least conducted a "taint hearing" to determine whether the children's testimony was sufficiently reliable to be admitted to trial. Although Schumacher made no motion for a "taint hearing" or for a mistrial in the trial court, he argues that Judge Card should have declared a mistrial or ordered a "taint hearing" based on the boys' trial testimony and the arguments in Schumacher's motion requesting a psychological examination. Schumacher concedes that he has to show plain error.

Schumacher cites one case from another jurisdiction that ruled that a "taint hearing" should precede a child's testimony where a defendant can establish that the investigation undermined the reliability of the child's testimony.[4] With this limited out-of-state authority, it is debatable whether a "taint hearing" is required. Schumacher has not convinced us that due process requires a "taint hearing." Because reasonable judges could differ on the propriety of a "taint hearing," Judge Card's failure to order one was not plain error.[5]

1. AS 11.41.434(a)(2).

2. AS 11.41.436(a)(3).

3. *See Harmon v. State*, 908 P.2d 434, 436 (Alaska App.1995), *abrogated on other grounds in State v. Coon*, 974 P.2d 386 (Alaska 1999); *Gaona v. State*, 630 P.2d 534, 537 (Alaska App.1981).

4. *See State v. Michaels*, 136 N.J. 299, 642 A.2d 1372, 1382–83 (1994).

5. *Cf. Marrone v. State*, 653 P.2d 672, 676 (Alaska App.1982).

*Was it error for Detective DeCoeur to demonstrate how Schumacher wiped his groin?*

Detective DeCoeur testified during the State's rebuttal case. During the execution of a search warrant at Schumacher's home, Schumacher claimed that a blood stain on a blanket was not from someone else, but resulted from sores he had in his groin area. Detective DeCoeur testified that he went with Schumacher into the utility room, where Schumacher lowered his pants, and wiped his right groin area with his right hand and his left groin area with his left hand. Schumacher objected to Detective DeCoeur's demonstration, arguing that it would be more prejudicial than probative, and a violation of his constitutional rights. The trial court overruled the objection and allowed Detective DeCoeur to demonstrate what Schumacher had done.

Schumacher argues that this evidence was more prejudicial than probative and should have been excluded under Alaska Rule of Evidence 403.

 But Schumacher's defense raised the question of whether he had the physical capacity to reach his groin. Considering this defense, evidence that Schumacher was able to reach his groin in DeCouer's presence was relevant. We also reject Schumacher's claim that this evidence was "grotesque" and obviously prejudicial. Therefore, permitting Detective DeCouer to testify about his personal observations and demonstrate what he saw was not an abuse of discretion.[6]

*Was it error for the trial court to bar Schumacher from conducting a demonstration of his own unless he took the stand?*

 On cross-examination of Detective DeCouer in the State's rebuttal case, Schumacher's attorney asked Judge Card at a side-bar conference to use Schumacher's body as a demonstrative aid while cross-examining DeCoeur. Judge Card ruled that Schumacher would not be allowed to perform his own demonstration unless he took the stand. Judge Card excused the jury, and gave Schumacher time to consider whether he wanted to present this testimonial evidence. Schumacher's attorney asked for a short break to consult with his client. After the break, Schumacher's attorney announced that Schumacher would not take the stand.

Schumacher argues that Judge Card's classification of his demonstration as testimonial was wrong. Schumacher points to Alaska Criminal Rule 16(c) to support his claim. Rule 16(c) provides that the State may require a person to participate in non-testimonial identification procedures, such as providing fingerprints, trying on clothing, speaking words or phrases, and permitting photographs without violating the person's right against self-incrimination.[7] Schumacher also relies on two out-of-state cases, *State v. Suddeth*[8] and *State v. Norris,*[9] which both hold that a defendant does not have to testify and waive his right against self-incrimination to try on shoes to see if they fit.[10]

But Schumacher was trying to demonstrate something more than the size of a body part. One of the themes Schumacher advanced in his defense was that he could not touch his genitals with his hands. Assuming relatively normal physiology and range of motion, touching one's genitals with one's hand results from voluntary muscular control. On the other hand, one's physical characteristics, such as one's fingerprint or physical size or appearance are characteristics, unlike voluntary movement, that are not readily subject to willful control.

Even though Schumacher's obesity may have hampered his mobility and degraded his range of motion, we conclude that Judge Card did not err by ruling that Schumacher's offered use of his body as a demonstrative aid was testimonial in character. Schumacher's offered demonstration would not display

---

**6.** *See Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980) (a trial court's rulings on the admissibility of evidence will not be overturned absent an abuse of discretion).

**7.** *See* Alaska R.Crim.P. 16(c)(1)-(2); *Fathke v. State,* 951 P.2d 1226, 1229 (Alaska App.1998).

**8.** 306 N.W.2d 786 (Iowa 1981).

**9.** 577 S.W.2d 941 (Mo.App.1979).

**10.** *See Suddeth,* 306 N.W.2d at 787–88; *Norris,* 577 S.W.2d at 948–49.

a simple physical characteristic, such as whether a shoe fit or whether he had a tattoo on his body [11] or whether his height matched a witness's description.[12] Instead, Schumacher's demonstration would attempt to show that the range of his voluntary hand movement stopped short of his penis, an ability of Schumacher's that Judge Card could reasonably conclude was subject to manipulation. We conclude that Judge Card did not err by barring Schumacher from using his body as a demonstrative aid unless he took the stand.

*Was Schumacher's composite 15–year term to serve excessive?*

■ Schumacher was sentenced to a composite term of 19 years with 4 years suspended. On the first two counts of first-degree sexual abuse of a minor, Judge Card sentenced Schumacher to 10 years with 2 years suspended with 1 year of the imposed term on the second count concurrent with the first count and the remainder of the sentence consecutive to the first count. Judge Card imposed 8–year concurrent terms on the remaining three counts of first-degree sexual abuse of a minor, and a concurrent 5–year term on the single count of second-degree sexual abuse of a minor.

In *State v. Andrews,*[13] this court outlined a benchmark sentencing range of 10 to 15 years for first offenders convicted of aggravated instances of child sexual abuse.[14] We indicated that an offense could be aggravated for any one of the following three reasons: (1) the defendant abused multiple victims; (2) the defendant committed multiple assaults on a single victim; or (3) the defendant caused serious injury to one or more victims.[15]

Schumacher was convicted of offenses against his three sons, so he abused multiple victims. Each victim reported multiple instances of abuse. As a result of the offenses, the victims experienced significant emotional impact that would likely require long term therapy. .

Schumacher argues that even though his imposed sentence does not exceed the high end of the *Andrews* 10– to 15–year benchmark for aggravated offenses, Judge Card did not support the sentence with sufficient findings.

Judge Card found that several statutory aggravating factors from AS 12.55.155(c) were proven by clear and convincing evidence: (c)(1) (a person other than an accomplice sustained physical injury as a result of Schumacher's conduct); (c)(5) (Schumacher knew or reasonably should have known that the victims were young children and therefore were particularly vulnerable); and (c)(18)(A) (Schumacher and the victims were living together in one social unit).

Judge Card also found that he needed to emphasize community condemnation and reaffirmation of societal norms out of the *Chaney* sentencing factors.[16] Judge Card fashioned the sentence to deter Schumacher and others and to isolate Schumacher from his children until they grew into young adulthood. Judge Card additionally found that though Schumacher genuinely cared for his children, sex offender treatment was unlikely to be successful (and therefore rehabilitation was questionable) because Schumacher continued to deny committing any sexual abuse.

Schumacher's 15–year term falls at the upper end of the bench mark for a first offender convicted of aggravated conduct.

11. *See United States v. Bay,* 762 F.2d 1314, 1316–17 (9th Cir.1984) (error for trial judge to refuse to allow defendant to display tattoos on his hands without testifying where presence of tattoos was relevant to identification).

12. *See State v. Sanders,* 691 S.W.2d 566, 569 (Tenn.Crim.App.1984) (error for trial judge to refuse defendant's request to stand before the jury to show his height without testifying).

13. 707 P.2d 900 (Alaska App.1985).

14. *Id.* at 913; *see also Haire v. State,* 877 P.2d 1302, 1305 (Alaska App.1994).

15. *See Andrews,* 707 P.2d at 913.

16. *See State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

Schumacher's offenses were aggravated because he sexually abused each of his multiple victims multiple times over a prolonged period. From our examination of the record, we conclude that Judge Card's findings supported the net 15–year term to serve. Schumacher's sentence is not clearly mistaken.[17]

*Conclusion*

The judgment of the superior court is AFFIRMED.

17. *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to affirm a sentencing decision unless the decision is clearly mistaken).