**STATE of Missouri, Plaintiff–Respondent,**

v.

**Allen Dale GILES, Defendant–Appellant.**

**No. SD 31231.**

Missouri Court of Appeals, Southern District, Division One.

Oct. 4, 2012.

Amy M. Bartholow, Columbia, MO, for Appellant.

Christ Koster, Karen L. Kramer, for Respondent.

NANCY STEFFEN RAHMEYER, J.

Allen Dale Giles ("Appellant") was convicted by a jury of two charges: statutory rape in violation of section 566.032, and statutory sodomy in violation of section 566.062.[1] He was sentenced to two consec-

---

1. All references to statutes are to RSMo Cum. Supp.2006, unless otherwise specified.

utive terms of life imprisonment. He brings two claims of trial court error concerning evidentiary rulings. We affirm the judgment.

Because both of the challenges are to evidentiary rulings and not to the sufficiency of the evidence, there is no reason to set forth in this opinion the details of the sexual abuse committed against an eight-year-old child. Appellant claims in his first point that the trial court failed to *sua sponte* interrupt a witness from the Children's Division. Appellant maintains in this appeal that the Children's Division worker testified inappropriately, as follows:

> [Prosecutor:] What are the possible findings that you can have in these type[s] of cases?
>
> [Witness]: Well, a case can be unsubstantiated, or a case can be what we call a preponderance of the evidence, which basically means that the evidence gathered was convincing and accurate as to the allegations.
>
> [Prosecutor]: And in this case as to [Appellant], what was your result?
>
> [Witness]: A preponderance of evidence for . . . [f]or touching and fondling [the victim] and also having intercourse with her.

No objection was made to the questions or answers, nor did Appellant at any time seek any curative remedy. Appellant now claims that the questions and answers invaded the province of the jury and were testimony about the ultimate issue in this case. We disagree.

 The first question is simply a question concerning the investigation which occurred after the claims of abuse came to light. The question asks what the possible findings are in these types of cases and is undoubtedly an acceptable question. The second question may skirt the line on an appropriate question, however, the response, that the Children's

Division found a "preponderance of the evidence" and proceeded with their investigation and follow up, does not invade the province of the jury. The Children's Division acted upon their internal finding and arranged for an interview at the Child Advocacy Center and ultimately referred the case to the Prosecutor's office. The jury was told that an investigation had occurred and the actions that occurred after the investigation. The jury heard the very specific testimony about the abuse and had to decide the two very specific charges before it beyond any reasonable doubt. An agency decision that there was enough evidence to go forward did not invade that province of the jury.

 Furthermore, Missouri courts historically reject invitations to criticize trial courts for declining to *sua sponte* take action on behalf of a party during witness examinations. *State v. D.W.N.,* 290 S.W.3d 814, 819 (Mo.App. W.D.2009). That is because uninvited interference by the trial judge in the court proceedings is generally discouraged in that it risks injecting the judge into the role of participant and invites trial error. *State v. Roper,* 136 S.W.3d 891, 902 (Mo.App. W.D. 2004). "We do not expect trial judges to assist counsel in the trial of a lawsuit[.] They preside to judge a lawsuit. *Sua sponte* action should be exercised only in exceptional circumstances." *State v. Drewel,* 835 S.W.2d 494, 498 (Mo.App. E.D.1992). Appellant represented himself but is bound by the same rules of procedure as those admitted to practice law. *State v. Watkins,* 102 S.W.3d 570, 571 (Mo. App. S.D.2003).

 This series of questions and answers provides a classic demonstration of why it would have been inappropriate for the court to intervene in the questions or answers. Assuming, arguendo, that the questions and answers were inappropriate,

an intervention by the court at that time would have highlighted the questions and the answers and Appellant could now claim that the court's intervention indicated the court's loss of neutrality. Appellant does not say what the possible remedies at trial would have been had a proper objection been made. Perhaps an admonition to disregard the questions and answers would have sufficed. In the rare case that a mistrial would have been necessary, it could have been done early in the trial. The extreme remedy of a new trial after all of the evidence has been heard is not warranted.

We find no trial court error, plain or otherwise, in the admission of the evidence of the questions and answers. Point I is denied.

In his second point, Appellant claims that the trial court plainly erred in allowing the State to cross-examine two witnesses about their knowledge of Appellant's previous juvenile adjudications for sodomizing his younger cousin and previous sentence to a sex offender treatment program. Appellant called two witnesses in his defense. The first was the mother of the victim. She generally testified that her daughter and Appellant interacted as a father and daughter; she claimed she never saw any sign that the child was afraid of Appellant and she had never been told that Appellant had touched the child inappropriately. She claims that had the child ever said something like that, she would have called the police and reported it. She also testified that, during a supervised visit with the child, the child told her Appellant did not do this.

During cross-examination, the prosecutor elicited testimony that the mother of the child and Appellant worked opposite shifts and that Appellant may have been alone with the child a few hours during the day before another couple moved into their home. She continued to live with Appellant and, although denying that she chose Appellant over her child, did admit that she lost custody of the child because she lived with Appellant. She claimed she knew in her heart that he would not do a thing like this.

In response to that answer, the prosecutor further challenged her claim that the mother knew in her heart that Appellant would *never* do anything like this by asking if she now knew that the victim's fourteen-year-old sister had also alleged inappropriate touching. The mother maintained her conclusion that Appellant would never do anything like this; she admitted that, although she knew Appellant had sodomized a cousin, she did not know that the cousin was only five years old at the time of the incident. The mother claimed that she knew Appellant would never do this because he got help. It was during the redirect examination of the mother by Appellant that the information came out that the incident with the younger cousin occurred when Appellant was seventeen and, thus, it was on his juvenile record but, as an adult, he had no other charges.

Appellant also called his father, Alvin Giles, as a witness. After generally testifying as to the close relationship with the victim, Mr. Giles testified that he did not believe that Appellant did this crime because he would protect a child, even so far as pleading guilty if it would protect a child. Appellant's father claimed that "[Appellant has] always been good with kids. All these years, I can't all of a sudden have him—believe that he'd be any other way." Appellant's father was asked, "And isn't it true that he sodomized his younger cousin[?]" Appellant's Father responded, "I'll never know. He—again, what—he let himself be accused rather than let the girl[.]"

Mr. Giles admitted that after Appellant got out of the sex offender treatment pro-

gram in Franklin County, he moved to Springfield and resided with Mr. Giles and Mr. Giles' sister. When asked if Appellant again sodomized the cousin in Greene County, Mr. Giles responded, "So she says." Mr. Giles did admit that Appellant then spent an entire year in the Juvenile Detention Center. Mr. Giles then said that all of the things that the prosecutor had asked him did change his belief, but subsequently clarified that he still did not believe that Appellant committed the crimes against victim or her sister. It is the testimony of these two witnesses that Appellant now claims constitute trial court error.

When a defendant has voluntarily put his character in issue, it is permissible for the prosecution to meet the issue thus presented by evidence of bad reputation. *State v. Goins*, 306 S.W.3d 639, 645 (Mo.App. S.D.2010). " 'By volunteering information regarding his good character, a defendant invites inquiry even into mere arrests or investigations not resulting in conviction.' " *Id.* (quoting *State v. Collier*, 892 S.W.2d 686, 690 (Mo.App. W.D.1994)). Thus, a witness to a defendant's good reputation may be cross-examined as to the facts of prior arrests or rumors of misconduct of the defendant, not to establish the truth of those facts or rumors, but to test the credibility of the witness and to ascertain what weight should be given to his testimony. *Id.*

Both of these witnesses vouched for the unassailable good character of Appellant. Neither witness limited themselves to the issues or facts of these particular charges; they broadened their testimony to claim that Appellant was of such good character that he would never do anything like this. The two witnesses made those statements despite the fact that both of them knew, from first hand information,[2] that Appellant had been accused on at least two prior occasions of sodomizing a young girl. The victim's mother rationalized her continuing exemplary character reference by claiming she knew it was a cousin but just did not know the cousin was that young and that Appellant got help. Appellant's father rationalized his conviction of his son's good character and good behavior with kids by stating that his son had nobly accepted the punishment of the juvenile court to keep the "babies" from having to go to court. It was Appellant who broadly questioned two witnesses as to whether Appellant would sexually assault young girls. Their denials certainly opened the door to further questioning about their actual knowledge about Appellant's past behavior with young girls. Under the clear circumstances of this case, we find no error, plain or otherwise, in the admission of the testimony elicited in cross-examination of the two witnesses.[3] Point II is denied.

The judgment is affirmed.

GARY W. LYNCH, P.J., and WILLIAM W. FRANCIS, JR., J., Concur.

---

**2.** Appellant claims that section 211.271.3 bars the admission of Appellant's juvenile records. His claim is not relevant in this situation where both parties knew about Appellant's history outside the review of any juvenile records.

**3.** It is worth noting that the prosecutor did not comment on the prior convictions during the closing argument. Commendably, the closing argument stated in part, "[I]f you take everything else out of this equation, all of the other evidence, if you focus even just solely on [the victim], just by what she told you and the stuff that she knows, no eight-year-old child is going to know that unless it happened to them."