

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| v. | ) | WD81348 |
| | ) | |
| TIMOTHY G. KIDD, | ) | |
| Appellant. | ) | FILED: May 28, 2019 |

## APPEAL FROM THE CIRCUIT COURT OF CASS COUNTY
### THE HONORABLE WILLIAM B. COLLINS, JUDGE

### BEFORE DIVISION ONE: VICTOR C. HOWARD, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND GARY D. WITT, JUDGES

Timothy Kidd appeals from his conviction of first-degree domestic assault, for which he was sentenced to eleven years in prison. He contends the circuit court erred in failing to intervene *sua sponte* when one of the State's witnesses offered allegedly improper character and propensity testimony. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In July 2015, Kidd and the victim were dating. On the morning of July 21, 2015, they woke up on a flatbed trailer in the front yard at the home of Kidd's brother, John.[1] Kidd and the victim had spent the night outside on the trailer

---

[1] To avoid confusion, we will refer to Kidd's brother by his first name, John. No disrespect or familiarity is intended.

because John would not let them sleep inside the house.  After they woke up, Kidd wanted to have sexual intercourse with the victim, but she refused.  Kidd kept rubbing the victim's hip, but she told him to stop.  Kidd became angry and got off of the trailer.

The victim also got off of the trailer, folded her blanket, and stacked her pillow and blanket on the edge of the trailer.  She put her purse on her shoulder and used her cell phone to call her sister and ask her to come pick her up.  Kidd tried to grab the victim's cell phone, so she stuck it in the pocket of her cargo shorts.  The victim then took her suitcase and started to walk away from Kidd.

The victim took two or three steps before Kidd went after her and started beating her.  He knocked her to the ground, sat on top of her waist, and repeatedly hit her with his fists in her face, neck, and chest.  She lost consciousness.  As the victim woke up, she remembered hearing John tell her to stay down because she was hurt.  He also told her that the police and an ambulance were on their way.

According to John, he had been awakened that morning by loud voices arguing.  He looked out of his bedroom window and saw Kidd and the victim, so he went back to bed.  Later, when he got up, he went to the living room and heard someone crying outside.  John went outside and saw the victim.  Her face was red and swollen.  It had not been like that when he had seen her the night before.  He did not see Kidd.  John called the police.

2

When the police arrived, they noticed that the victim's face was red and swollen, and she was bleeding from her mouth. She appeared dazed and confused. The police were not able to locate Kidd.

The victim was taken to the hospital in the ambulance. During the ambulance ride, she was in and out of consciousness. The emergency room doctor who treated the victim determined that she had signs of a head injury with an altered level of consciousness, signs of blunt force trauma to her head and face, a depressed fracture of her left maxillary sinus cavity, soft tissue swelling to the face, and a hematoma in her sinus cavity. The injuries were all acute, which meant that they were recent. The victim's injuries were serious enough that the emergency room doctor activated the trauma team and had a trauma surgeon evaluate her. As a result of her injuries, the victim could eat only soft food for three weeks after the incident because of the pain.

The State charged Kidd, as a prior domestic violence offender, with first-degree domestic assault. A jury trial was held. The jury found Kidd guilty, and the court sentenced him to eleven years in prison. Kidd appeals.

## ANALYSIS

In his sole point on appeal, Kidd contends the circuit court erred in failing to intervene *sua sponte* when John offered improper character and propensity testimony. Specifically, during direct examination, the State had just started to ask John about the incident when the following exchange occurred:

3

Q. You indicated that they were over at your house on this particular incident in July. Do you remember why they were staying there?

A. I don't know. *I figured he had a court date somewhere.*

(Emphasis added.) Defense counsel did not object to the italicized testimony, which Kidd now asserts was inadmissible. Therefore, he requests plain error review.

Plain error relief is granted "'only when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Baumruk*, 280 S.W.3d 600, 616 (Mo. banc 2009) (citation omitted). Not all prejudicial error is plain error, however. *Id*. Plain errors are only those errors that are "'evident, obvious, and clear.'" *Id*. (citation omitted).

Kidd argues that John's statement, "I figured he had a court date somewhere," constituted improper character and propensity evidence because it allowed the jury to infer that he had prior convictions, was facing other criminal charges, or had committed prior bad acts. He argues that the court plainly erred by not intervening *sua sponte* and instructing the jury to disregard the statement. We disagree.

John's statement was uninvited, as the State had asked him only if he remembered why Kidd and the victim had spent the night in his front yard. Only John's answer, "I don't know," was responsive to the question; his follow-up statement, "I figured he had a court date somewhere" was nonresponsive and

4

volunteered. In determining the prejudicial effect of an uninvited reference to other crimes, courts generally examine five factors:

> (1) Whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement, and instructed the jury to disregard the volunteered statement; and 5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt.

*State v. Goff*, 129 S.W.3d 857, 866 n.7 (Mo. banc 2004). Applying these factors to this case, we find that, in addition to the fact that John's statement was nonresponsive and volunteered, it was singular, isolated, and was not repeated by the State in the rest of the trial; it was vague and indefinite and did not specifically refer to any other criminal charges or prior bad acts that Kidd may have committed; there was no objection for the circuit court to rule on[2]; and the evidence against Kidd was so strong that the statement did not play a decisive role in the determination of his guilt. Indeed, the testimonies of the victim and John proved that Kidd assaulted the victim, and the testimony of the emergency room doctor established the seriousness of the victim's injuries. Based upon these factors, Kidd

---

[2] That defense counsel failed to object at trial "suggests that the statement then did not seem significant or objectionable." *State v. Smith*, 293 S.W.3d 149, 152 (Mo. App. 2009).

did not suffer prejudice, let alone manifest injustice or a miscarriage of justice, from John's unsolicited statement.

Furthermore, we note that "Missouri courts historically reject invitations to criticize trial courts for declining to *sua sponte* take action on behalf of a party during witness examinations." *State v. Giles*, 386 S.W.3d 822, 824 (Mo. App. 2012). The reason such action is discouraged is because "it risks injecting the judge into the role of participant and invites trial error." *Id*. "We do not expect trial judges to assist counsel in the trial of a lawsuit[.] They preside to judge a lawsuit. *Sua sponte* action should be exercised only in exceptional circumstances." *Id*. (quoting *State v. Drewel*, 835 S.W.2d 494, 498 (Mo. App. 1992)). There are no exceptional circumstances in this case. We find no error, plain or otherwise, in the circuit court's failure to intervene *sua sponte* during John's testimony. Point denied.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR

6