

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111691 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Warren County |
| vs. | ) | 19BB-CR00737-01 |
| | ) | |
| PEDRO TORRES JASSO, | ) | Honorable Linda R. Hamlett |
| | ) | |
| Appellant. | ) | Filed: April 23, 2024 |

Before John P. Torbitzky, P.J., James M. Dowd, J., and Michael S. Wright, J.

**Introduction**

Appellant Pedro Torres Jasso appeals his conviction for one count of second-degree rape for a crime he committed against the seventeen-year-old Victim in September 2019 in Warren County, Missouri. Jasso asserts the trial court plainly erred (1) in accepting his waiver of jury sentencing; (2) in allowing Victim to testify that she was intimidated during her deposition; (3) in failing to strike *sua sponte* expert J.W.'s testimony that she was unaware why someone would lie about being raped in response to defense counsel's question whether victims sometimes falsely allege rape; and (4) in failing to intervene *sua sponte* when during its closing argument the State emphasized the age difference between Jasso (forty-seven) and Victim (seventeen) at the time of the rape. None of Jasso's points were preserved for our review and we decline to review any of them for plain error. Jasso's conviction and seven-year sentence are affirmed.

## Background

Victim was a high school student who worked at a Mexican restaurant and occasionally served Jasso, his wife, and family. On one of these occasions, Jasso gave Victim a piece of paper with his telephone number. Jasso and Victim began communicating through text messages. Jasso repeatedly requested to meet Victim privately and commented on her attractiveness which made Victim uncomfortable.

Later, after Jasso encountered Victim at a local festival, he arranged to pick her up from her high school the next day. Jasso instructed Victim to meet him away from school but on a street near the school which she did. Jasso then drove Victim forty minutes to a home in the Innsbrook development in Warren County. Victim's understanding was that Jasso intended just to show her the lake. Jasso had access to an unoccupied home there on which he had done work and in fact attached a trailer to his truck after he picked up Victim so that his entry into the development would not raise suspicion. He then instructed Victim to hide in the back of the truck as he entered the security gate to the development. Once inside the home, Jasso raped Victim in one of the bedrooms.

Back in Jasso's truck, Victim's Mother called her and told Victim she knew she was not at school. Victim disconnected the call and then Jasso took Victim's phone and forced her to erase any messages between her and Jasso.

Jasso then dropped Victim off at her school whereupon D.P., a family friend, together with a police officer, picked her up. At D.P.'s home, Victim revealed to Mother, D.P. and the police officer that Jasso had raped her.

At the police station, Victim was upset and unable to identify where the crime occurred. D.P. then took Victim to Cardinal Glennon Children's hospital in St. Louis where Victim

2

detailed the rape to social worker S.M.  Dr. K.F. then examined victim and found injuries to Victim that were consistent with having been raped.

*The Trial*

On the morning of trial, Jasso waived jury sentencing and did not object when the court dismissed the jury after the guilty verdict.

At one point during Jasso's recross-examination of the Victim, done through a Spanish-English interpreter, defense counsel sought to impeach Victim with her deposition testimony that she knew what the word "romantic" meant after she testified at trial that she did not know.  Then in its redirect, the State, in an effort to rehabilitate Victim on this issue, adduced Victim's testimony that she had felt "a little" intimidated during her deposition.

Witness J.W. is an expert on the psychological impact rape has on victims.  On cross-examination, Jasso asked J.W. if there "is the possibility that whoever's coming in and making an accusation just isn't telling the truth."  J.W. said she does not "know what they get out of lying" and that she does not think "it happens as much as the general community thinks it does." Jasso did not move to strike the testimony.

During closing, the State repeatedly mentioned the thirty-year age difference between the middle-aged Jasso and his teenaged Victim as reflecting the unequal balance of power between the two and in connection with the manipulative and exploitative nature of his conduct which the State referred to as "grooming."  Defense counsel did not object.

**Standard of Review**

Under certain circumstances, we may review unpreserved errors under our plain error standard of review.  *State v. Townsend*, 649 S.W.3d 72, 78 (Mo. App. E.D. 2022); *See State v. Speed*, 551 S.W.3d 94, 97 (Mo. App. W.D. 2018) (citing *State v. Clay*, 533 S.W.3d 710, 718

3

(Mo. banc 2017)); Rule 30.20. Rule 30.20 states in relevant part that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *See Speed*, 551 S.W.3d at 98 (citing *State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015)).

Plain error review is a two-step process. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). First, we must determine whether the claim of error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *Id*. (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)); *State v. McKay*, 459 S.W.3d 450, 455-56 (Mo App. E.D. 2014); Rule 30.20. Not every prejudicial error, however, constitutes plain error, as plain errors are "evident, obvious, and clear." *Id*. If the claim of plain error facially establishes grounds for believing that manifest injustice or a miscarriage of justice resulted, we may elect to exercise our discretion and proceed to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id*.

**Discussion**

*Point I*

In Point I, Jasso alleges the trial court plainly erred in accepting his oral waiver of jury sentencing because his waiver was not done in writing prior to voir dire as required by Section 557.036.4(1) RSMo. This record does not reflect an evident, obvious, or clear error by the trial court and therefore we decline to review this point for plain error.[1]

---

[1] This Court follows *State v. Weaver*, 178 S.W.3d 545 (Mo. App. W.D. 2005) in this regard where the court held that an oral waiver of jury sentencing, while inconsistent with section 557.036.4(1)'s requirement that it be in writing, does not amount to manifest injustice "when [the defendant] requested court sentencing and is merely unhappy with the result." *Id*. at 548. *See State v. Hilbert,* 663 S.W.3d 462 (Mo. banc 2023) (finding Hilbert's waiver of his

4

*Point II*

In Point II, Jasso alleges the trial court abused its discretion by permitting the State, after Jasso had impeached Victim with her deposition testimony, to rehabilitate Victim by adducing from her on redirect examination that she felt intimidated at her deposition. Jasso objected to the relevance of the testimony.[2] Here, Jasso argues the State's only proper course of action was to move to limit or terminate the Victim' deposition through Rule 57.03(e). Jasso did not raise this argument when he objected at trial, nor include it in his motion for a new trial.[3] Therefore, this point is not preserved and is only reviewable under plain error review.

This record does not reflect an evident, obvious, or clear error by the trial court and therefore we decline to review this point for plain error.

*Point III*

In Point III, Jasso alleges the trial court plainly erred in failing to strike *sua sponte* expert J.W.'s testimony that she does not "know what [victims] get out of lying" and that she does not think "[lying] happens as much as the general community thinks it does" after defense counsel asked if there "is the possibility that whoever's coming in and making an accusation just isn't telling the truth."

---

*constitutional* right to a jury trial was not plain error when defense counsel stated at the pretrial hearing on the record that Hilbert would proceed with a bench trial).

[2] "On redirect examination it is proper to examine a witness on any matters which tend to refute, weaken or remove inferences, impressions, implications or suggestions which may have resulted from [] testimony on cross-examination, notwithstanding the facts elicited may be prejudicial to the defendant." *State v. Leisure*, 749 S.W.2d 366, 377 (Mo. banc 1988) (quoting *State v. Crawford*, 619 S.W.2d 735, 740 (Mo. 1981)).

[3] "To preserve a claim of error, counsel must object with sufficient specificity to apprise the trial court of the grounds for the objection." *State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015). "An issue is not preserved for appellate review if the issue is not included in the motion for a new trial." *State v. Wood*, 580 S.W.3d 566, 578 (Mo. banc 2019).

"Although plain error review is discretionary, this court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017) (quoting *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012)). We decline to review this point for plain error as the testimony was invited by defense counsel's own question.

*Point IV*

In Point IV, Jasso seeks to convict the trial court of plain error for its failure to *sua sponte* intervene during the State's closing argument when the State emphasized the thirty-year age difference between Jasso and Victim.

Laying aside the wide latitude the law affords counsel in closing arguments and the fact that Jasso has provided no authority for the proposition that it is improper to mention the difference in age between a perpetrator and his victim in a second-degree rape case, "[w]e do not expect trial judges to assist counsel in the trial of a lawsuit[.] They preside to judge a lawsuit." *State v. Giles*, 386 S.W.3d 822, 824 (Mo. App. S.D. 2012) (quoting *State v. Drewel*, 835 S.W.2d 494, 498 (Mo. App. E.D. 1992)). "[U]ninvited interference by the trial judge in the court proceedings is generally discouraged in that it risks injecting the judge into the role of participant and invites trial error." *Id*. Accordingly, we decline to review this point for plain error.

**Conclusion**

Jasso's conviction and sentence are affirmed.

_____
James M. Dowd, Judge

John P. Torbitzky, P.J., and
Michael S. Wright, J., concur.

6