

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
)
    Respondent, )
)
v. )    WD86686
)
JEFFERY LYNN NICHOLS, )
)    Opinion filed:  January 28, 2025
)
    Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**
**THE HONORABLE PATRICK K. ROBB, JUDGE**

Division One:  Gary D. Witt, Presiding Judge,
Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

Jeffery Nichols appeals the judgment of the Circuit Court of Buchanan County convicting him, after a jury trial, of one count of driving while intoxicated (chronic offender) and one count of driving with a revoked license. Nichols was sentenced to serve ten years in the Missouri Department of Corrections for driving while intoxicated and one year in county jail for driving with a revoked license, with the sentences to run concurrently. Nichols raises three points on appeal, asserting: (1) he is entitled to a new trial based on a juror's failure to disclose that she knew a member of Nichols's family; (2) the trial court plainly erred in allowing the jury to consider evidence of his "prior bad acts";

and (3) there was insufficient evidence to support his conviction of driving with a revoked license; specifically, that he "knew or was aware" his license was revoked. For the reasons stated below, we affirm the judgment of the trial court.

## Factual and Procedural Background

The State charged Nichols with one count of driving while intoxicated and one count of driving with a revoked license. The evidence adduced at trial, in the light most favorable to the verdicts, was as follows.

On the night of November 17, 2022, Witness was on his back porch when he heard a "loud screeching noise." He assumed it was "a wreck or something," so he called 911 as he ran to the front of his house. He looked down the street and saw a black pickup truck "embedded in the front porch" of a neighboring home. The driver's side of the truck was "up against" the house. Witness ran to the truck to see if anyone needed help.

Nichols was lying inside the truck on the passenger side, face down. The driver's-side air bag had been deployed; the passenger's-side air bag had not. Nichols opened the door and fell out of the truck. He stood up for 20 or 30 seconds, then fell back to the ground.

A police officer arrived and found Nichols lying face down in the grass next to the truck. An empty beer can was "next to the truck with the wreckage from the truck." Officer asked Nichols if he had been drinking that night, and he responded that he had. When asked how much he had to drink, Nichols responded, "Too much."

Nichols was transported to the hospital by Emergency Medical Services. At the hospital, Officer asked Nichols if he remembered anything about the crash; Nichols said he did not. Officer observed that Nichols was sluggish, had bloodshot eyes, droopy eyelids,

2

and slurred speech, and was emitting an odor of intoxicating beverages. Based on Officer's training and experience, he considered these signs of intoxication.

The emergency room physician who treated Nichols also noticed that Nichols "smelled of alcohol." A blood sample was taken at the hospital showing Nichols had a blood alcohol content of .232, nearly three times the legal limit. Nichols told the emergency room physician that he was in a car accident that night and he had been driving the car.

At the conclusion of the State's evidence, the trial court read to the jury the following agreed-upon summary of Nichols's certified driving record: "Nichols' driving [sic] license was revoked by the Missouri Department of Revenue effective June 8, 2010 and his driving privilege or driver's license had not been reinstated by the Department of Revenue on November 17, 2022."

The jury found Nichols guilty of driving while intoxicated and driving with a revoked license. The trial court determined that Nichols had four prior intoxication-related traffic offenses, and thus was a chronic DWI offender, a class C felony. The trial court also concluded that those four prior convictions increased Nichols's charge of driving while revoked to a class E felony. The trial court sentenced Nichols to serve ten years in the Department of Corrections for driving while intoxicated and one year in the county jail for driving with a revoked license, to be served concurrently.

Nichols appeals, asserting three claims of trial court error.

**Point I – Juror Nondisclosure**

In his first point, Nichols asserts the trial court plainly erred in overruling the claim of juror nondisclosure raised in his amended motion for new trial.

3

*Relevant Record*

During voir dire, the jury panel was asked, "Does anyone know a member of the defendant Jeffery Nichols' family?" No one responded to that question.

Following the jury's verdicts, Nichols filed a timely motion for new trial that raised two claims of trial court error. Nichols then filed an untimely amended motion that added an allegation of juror nondisclosure. Nichols alleged that Juror No. 11 recognized Nichols's family while they were sitting in the gallery during trial, Juror No. 11 told a fellow juror because he was a federal agent and she believed he would know the best course of action, and the fellow juror told Juror No. 11 she did not need to inform anyone so long as her decision would not be affected. Nichols alleged that Juror No. 11 did not advise the trial court or any court staff that she recognized Nichols's family, and this constituted intentional nondisclosure, warranting a new trial.

The trial court heard evidence on Nichols's claim of juror nondisclosure. Juror No. 11 testified that during the jury selection process and when she was picked for the jury she did not "know who Mr. Nichols was" and nothing about him or his name "r[a]ng a bell." She stated that when the jury came back into the courtroom for opening statements, she recognized a member of Nichols's family in the gallery; the family member's children and Juror No. 11 attended school together. Juror No. 11 described that family member not as a friend, but "just someone [she] kn[e]w." Juror No. 11 inferred that the family member was related to Nichols because she was in the courtroom, but Juror No. 11 did not know how Nichols and the family member were related.

Juror No. 11 stated she told the juror sitting next to her "since he was a federal agent" and he "would probably give the best judgment." Juror No. 11 did not tell the judge, court staff, or the attorneys. Juror No. 11 stated she was able to be unbiased as a juror at trial.

The trial court denied Nichols's amended motion for new trial, stating it did not "see this as juror nondisclosure in that" Juror No. 11 answered the questions truthfully during jury selection. The trial court also found no "prejudice to the defendant."

*Preservation and Standard of Review*

Nichols concedes this claim of error was not preserved because it was raised in an untimely amended motion for new trial. *See State v. Vickers*, 560 S.W.3d 3, 23 (Mo. App. W.D. 2018) (an untimely motion for new trial preserves nothing for appeal). Nichols requests we review this claim for plain error.

"Generally, this Court does not review unpreserved claims of error." *State v. Brandolese*, 601 S.W.3d 519, 525 (Mo. banc 2020). "Rule 30.20 alters the general rule by giving appellate courts discretion to review 'plain errors affecting substantial rights . . . in the discretion of the court . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.'" *Id.* at 526 (quoting Rule 30.20).

*Analysis*

"Juror non-disclosure during voir dire, requires a two-prong analysis," in which the court determines whether a nondisclosure occurred, and if so, whether it was intentional or unintentional. *State v. Johnson*, 284 S.W.3d 561, 569-70 (Mo. banc 2009). This analysis focuses on such factors as the clarity of the question posed to the jury panel and the

reasonableness of a juror's failure to respond to the question. *See id.* Here, the trial court found that Juror No. 11 answered questions truthfully during voir dire, and thus no nondisclosure occurred. Nichols does not challenge this finding; rather, his claim of nondisclosure is based on events that occurred after jury selection. He asserts that when Juror No. 11 "became aware of her familiarity" with Nichols's family *during trial*, her failure to "disclose that familiarity to the trial court was an intentional nondisclosure" entitling him to a new trial. We disagree.

We find the Missouri Supreme Court's opinion in *State v. Johnson* instructive, as that case also involved a juror who first "became aware of her familiarity" with an individual during trial. In *Johnson*, the defendant filed a motion for new trial, asserting a juror ("Juror") failed to disclose in voir dire and during trial that she was familiar with one of the State's witnesses, a law enforcement officer that she knew from working with his wife. 284 S.W.3d at 568-69. Although a list of witnesses was read to the jury panel in voir dire, Juror testified at a post-trial hearing that "it didn't register to" her that she knew the State's witness until she saw him on the stand. *Id.* at 569. At that point, she "didn't know what [she] could do. . . . If [she] should have said, [she] didn't know." *Id.* The trial court found that Juror's "conduct was not non-disclosure or, at worst, was unintentional non-disclosure," and denied the motion for new trial. *Id.* The Missouri Supreme Court affirmed, determining the trial court's findings were supported by the evidence in the record. *Id.* at 570. In affirming, the Supreme Court noted that Juror "was not instructed at any time what to do in the unlikely event that she recognized a witness during trial," and concluded that

6

while Juror "should have brought this to the trial court's attention, her silence [was] not unreasonable." *Id.*

Similar to the juror's conduct in *Johnson*, here, the record supported that Juror No. 11's conduct "was not non-disclosure." Juror No. 11 stated that during jury selection, she did not know who Nichols was and she did not realize she knew a member of his family until Juror No. 11 saw that person during trial. Juror No. 11 was not instructed what to do in the event that she recognized one of Nichols's family members during trial, and thus we find "her silence [was] not unreasonable." *See Johnson*, 284 S.W.3d at 570.

Even if we were to find Juror No. 11's conduct constituted a "nondisclosure," it was—like in *Johnson*—"at worst [an] unintentional non-disclosure." *Id.* at 569. "[I]f nondisclosure was unintentional, 'a new trial is not warranted unless prejudice resulted from the nondisclosure that may have influenced the jury's verdict.'" *St. Louis Univ. v. Geary*, 321 S.W.3d 282, 296 (Mo. banc 2009) (quoting *State v. Mayes*, 63 S.W.3d 615, 625 (Mo. banc 2001)). As the party seeking a new trial, Nichols "has the burden of proving prejudice," *see id.*, and because Nichols seeks plain error review, he must establish Juror No. 11's alleged "nondisclosure" resulted in a manifest injustice or miscarriage of justice, *see Brandolese*, 601 S.W.3d at 526-27. Nichols has failed to do so. He argues that Juror No. 11's "intentional nondisclosure *per se* required a new trial," and "it does not matter that the trial court found no prejudice," as "[d]efects in the jury selection process are recognized as constituting structural error" that require reversal. But as discussed above, any nondisclosure of Juror No. 11 was unintentional. Additionally, because Nichols seeks plain error review, he bears the burden of establishing manifest injustice from Juror No.

7

11's conduct, regardless whether his claim of error is characterized as "structural." *See Brandolese*, 601 S.W.3d at 529 (under plain error review, the defendant was required to establish the trial court's refusal to strike juror who was related to the prosecutor resulted in manifest injustice: "all errors—whether statutory, constitutional, structural, or based in some other source—are subject to the same treatment under this Court's plain error framework"). Here, Juror No. 11 testified that she was able to be an unbiased juror, and Nichols does not cite anything in the record to suggest that Juror No. 11's familiarity with his family member may have influenced the verdict. *See Geary*, 321 S.W.3d at 296 ("the record must support all allegations of nondisclosure and prejudice"). We thus find Nichols has failed to establish manifest injustice or a miscarriage of justice resulted from Juror No. 11's alleged nondisclosure.

Nichols is not entitled to reversal of his convictions and a new trial based on Juror No. 11's failure to disclose during trial that she was familiar with a member of Nichols's family. Point I is denied.

## Point II – Evidence of Prior Bad Acts

In his second point, Nichols asserts the trial court plainly erred in "failing to direct the jury on its own motion to disregard [Officer's] testimony" that he identified Nichols through use of police booking photos. Nichols asserts this testimony "constituted prejudicial other crimes evidence that the jury heard."

During Officer's direct examination, he testified that he did not take Nichols into custody, Nichols was released at the hospital, and Officer identified Nichols through booking photographs:

Q. All right. And then what happened next?

A. I released him at the hospital. I released him on scene—or on scene at the hospital, released him there, didn't take him into custody, then I went back to the station and started on the paperwork.

Q. And you testified earlier that you had identified that person. How did you identify them?

A. He gave me his information and it matched the booking photos that we had.

Q. And again, who was that person?

A. Jeffrey Nichols.

*Preservation and Standard of Review*

To preserve a claim of evidentiary error, an objection must be made contemporaneous to the challenged evidence. *State v. Brown*, 596 S.W.3d 193, 207 (Mo. App. W.D. 2020). Additionally, in jury-tried cases, an allegation of evidentiary error "is not preserved for appellate review if the issue is not included in the motion for a new trial." *State v. Speed*, 551 S.W.3d 94, 97 (Mo. App. W.D. 2018). Defense counsel did not object to Officer's above-quoted testimony, nor was this claim of error included in a motion for new trial. Consequently, as Nichols concedes, this claim can only be reviewed for plain error. "[T]o prevail on plain error review, [the defendant] must show that the trial court's error so substantially violated his rights that manifest injustice or a miscarriage of justice

results if the error is not corrected." *State v. Sanchez*, 186 S.W.3d 260, 265 (Mo. banc 2006).

*Analysis*

Nichols asserts that Officer's testimony advised the jurors of Nichols's "other prior bad acts" by informing them that he had previously "been in the Buchanan County Jail and [had] been booked by the police there." He asserts this evidence "did not have a legitimate tendency to establish [he] was guilty of the charges in this case," and "was prejudicial." We find, however, that Nichols failed to prove he suffered manifest injustice or a miscarriage of justice from Officer's challenged testimony.

We have cautioned that terms such as "mug shot" and "booking photo" should not be employed in a criminal trial because of the danger that the jury may consider such references as evidence of prior crimes. *See State v. Rodgers*, 3 S.W.3d 818, 822 (Mo. App. W.D. 1999) (testimony referring to a "mug shot" presented the potential for prejudice adverse to the defendant); *State v. Davis*, 242 S.W.3d 446, 449 (Mo. App. S.D. 2007) ("Albeit that 'mug shot' may have a more onerous connotation than 'booking photo,' the same danger exists that a jury might equate the booking photo reference to a previous criminal conviction."). However, we have also stated that "[a]n inference suggesting prejudicial evidence of other crimes only arises from such a reference if it discloses a defendant's prior arrests or convictions." *Rodgers*, 3 S.W.3d at 822 (the use of the term "mug shot" does not "necessarily connote[] the commission of other crimes"). Accordingly, we have refused to find prejudicial error from brief references to a "booking photo" or "mug shot" that do not connect the defendant to a specific crime. *See Davis*, 242

10

S.W.3d at 449 (the trial court did not abuse its discretion in refusing to declare a mistrial after a police officer identified a photograph of defendant as a "booking photo": the "reference was fleeting and did not connect defendant to a specific crime"); *Rodgers*, 3 S.W.3d at 822-23 (finding that, although the detective's use of the term "'mug shot' was unnecessary and the court was in error in overruling the objection," the defendant did not suffer prejudice given that it "was an isolated comment and did not connect the defendant with a specific crime").

We find Nichols did not suffer prejudice from Officer's testimony. Like the references in *Rodgers* and *Davis*, Officer's reference to "booking photos" was brief, isolated, and did not connect Nichols to a specific crime. Further, in *Rodgers* and *Davis*, no prejudicial error was found where the defendants requested relief from the trial court and were denied. Here, Nichols requested no relief. "Missouri courts historically reject invitations to criticize trial courts for declining to *sua sponte* take action on behalf of a party during witness examinations." *State v. Kidd*, 575 S.W.3d 785, 788 (Mo. App. W.D. 2019). "The reason such action is discouraged is because it risks injecting the judge into the role of participant and invites trial error." *Id.* (internal marks omitted). Therefore, "[*s*]*ua sponte* action should be exercised only in exceptional circumstances." *Id.* We find no exceptional circumstances exist in this case. Accordingly, we find the trial court did not plainly err by failing to intervene *sua sponte* and direct the jury to disregard Officer's reference to "booking photos."

Point II is denied.

## Point III – Sufficiency of the Evidence: Driving While Revoked

In his third point, Nichols asserts the trial court erred in denying his motion for judgment of acquittal on the charge of driving while revoked because the State "failed to present sufficient evidence as it failed to prove Mr. Nichols 'acted with criminal negligence' such that he 'knew or was aware' that his operator's license was revoked on November 17, 2022."

*Relevant Record*

At a pre-trial hearing, the State moved to admit into evidence at trial a certified copy of Nichols's Missouri Department of Revenue driving record. Defense counsel did not object, and the evidence was admitted as Exhibit 22. The parties discussed how Exhibit 22 would be presented to the jury:

> [Prosecutor]: So we have admitted the Department of Revenue's driving records to prove in part that defendant was revoked at the time. So I wasn't sure how you wanted us to actually get that in or tell the jury about it.
>
> . . .
>
> The Court: Well, the evidence is in. Right?
>
> [Prosecutor]: Yes. And what I'm really asking about is I don't want to prejudice the jury.

Defense counsel acknowledged that Nichols's driving record was "going to show all his DWIs," and she did not want those "shown to the jury." The trial court explained that, in driving-while-revoked trials, its general practice is to summarize the defendant's driving record. The parties agreed to have the trial court read a summary of Nichols's driving record to the jury.

12

During trial, at the conclusion of the State's case, the trial court stated the following to the jury:

> Ladies and gentlemen of the jury, the Court has received into evidence Exhibit No. 23 [sic], which is the certified driving record from the Missouri Department of Revenue for Jeffrey Lynn Nichols, date of birth . . . .

> The Court will summarize the relevant portions of the exhibit for the jury to consider in their deliberations in this case. Exhibit No. 22 indicates that Jeffrey Lynn Nichols' driving [sic] license was revoked by the Missouri Department of Revenue effective June 8, 2010 and his driving privilege or driver's license had not been reinstated by the Department of Revenue on November 17, 2022.

During deliberations, the jury requested to review Nichols's driving record. The trial court refused to provide Exhibit 22 to the jury, finding "the Court does not intend to provide that for the jury during their deliberations because of the fact that it contains a lot of irrelevant information and highly—what the Court would see as highly prejudicial information, including police reports from previous police encounters between the defendant and law enforcement." The trial court's response to the jury was: "The Court previously summarized the relevant portions of the certified driving record from the Department of Revenue. And as a result, Exhibit No. 22 will not be provided to the jury during deliberations."

### Standard of Review

"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence and inferences." *State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016) (internal marks omitted). "This Court,

13

however, may not supply missing evidence, or give the state the benefit of unreasonable, speculative or forced inferences." *Id.* (internal marks omitted). "Evidence is sufficient to support a conviction when there is sufficient evidence from which a reasonable fact-finder might have found the defendant guilty beyond a reasonable doubt." *Id.* (internal marks omitted).

*Analysis*

Nichols argues that the State failed to present sufficient evidence to support his conviction of driving while revoked, in that the State "failed to prove [he] 'acted with criminal negligence' such that he 'knew or was aware' that his operator's license was revoked on November 17, 2022." We disagree, and find the State presented evidence that Nichols acted with criminal negligence.

"A person commits the offense of driving while revoked if such person operates a motor vehicle on a highway when such person's license or driving privilege has been cancelled, suspended, or revoked under the laws of this state or any other state and acts with criminal negligence with respect to knowledge of the fact that such person's driving privilege has been cancelled, suspended, or revoked." § 302.321.1, RSMo 2016. "Criminal negligence" is defined as the "failure to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation[.]" § 556.061(16), RSMo Cum. Supp. 2020.

Here, the jury heard evidence that Nichols's driver's license "was revoked by the Missouri Department of Revenue effective June 8, 2010 and his driving privilege or

14

driver's license had not been reinstated by the Department of Revenue on November 17, 2022." In other words, the jury heard that Nichols's license had been revoked without reinstatement for twelve years prior to the date of the charged offense. The jury could have inferred from the amount of time that Nichols's license had been revoked that he had an unreasonable ignorance of his license revocation, and thus acted criminally negligent by continuing to drive. *See State v. Salsman*, 686 S.W.3d 376, 391 (Mo. App. S.D. 2024) (Where the State presented evidence that the defendant's license had been revoked "twenty years prior with no renewal," the "jury was free to infer [the defendant] had an 'unreasonable ignorance' of his license revocation, given the amount of time between his license revocation and the accident, and from that inference determine [the defendant] drove with criminal negligence by continuing to drive while his license was revoked.").[1]

In arguing the evidence was sufficient to support Nichols's conviction, the State cites to Nichols's driving record, which the State contends "reflected an extensive history of license revocations and multiple convictions for driving while revoked, as well as the issuance to [Nichols] of a non-driver's identification card that was still active on the date of the charged incident." The State argues this "was sufficient evidence to show [Nichols's]

---

[1] In *Salsman*, the State presented evidence that the defendant's license had been revoked since 1997 (20 years prior to the charged offense) *and* the defendant had a conviction for driving while revoked in 2015. *See* 686 S.W.3d at 390-91. On appeal, the defendant argued this evidence was insufficient to support his driving-while-revoked conviction, and also that the admission of his 2015 conviction into evidence was erroneous. *See id*. at 390-93. The Southern District determined the evidence was sufficient to support the conviction, and even if the admission of the 2015 conviction was erroneous, the defendant suffered no prejudice, as there was no "reasonable probability the jury would have reached a different result had the trial court not informed it of [the defendant's] 2015 DWR conviction because the jury would have still heard the uncontested fact that [the defendant's] license had not been reinstated 'since 1997.'" *Id.* at 393.

knowledge that his license was revoked." However, Nichols's driving record was never shown to the jury, therefore the jurors were unaware of the evidence the State asserts supported his conviction. Thus, the State's argument raises the question: Can evidence that was admitted but not published to the jury be relied upon to support a criminal conviction? This issue is currently pending before the Missouri Supreme Court in *State v. Tate*, SC100676.[2] Nonetheless, we need not wait for the decision in *Tate* to determine the sufficiency of the evidence here because—as described above—when considering only the evidence actually presented to the jury, we still find sufficient evidence supported Nichols's conviction.

For the above-stated reasons, we find the evidence was sufficient to convict Nichols of driving with a revoked license. Point III is denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

---

[2] We note that in *State v. Tate*, the jurors did not request to see the evidence at issue during deliberations, and thus were not expressly denied access to the evidence, as the jurors were here.